

FILED

MAY 2 7 2025

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

1 | Tearria & Clinton Simmons; **Billy Coram**, *pro se*
2 | PLAINTIFFS
   | 18 Hurricane Creek Rd. **[Apt. B]**
3 | Hurricane, WV 25526 ;
   | 304-539-8262; 423-395-3550 tialashes@icloud.com;
4 | 681-777-3536; csimmons4pbcc@gmail.com;
5 | **304-563-5784; coramrobert64@gmail.com**

6 | PLAINTIFFS, Tearria & Clinton Simmons, and on behalf of their minor children; Billy Coram, *pro se*

7 |

## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
#### HUNTINGTON DIVISION

| | |
|---|---|
| **TEARRIA AND CLINTON SIMMONS,** individuals, their children, **A.B.P., O.S.S., and R.T.S.,** by and through their mother; **BILLY LEE CORAM,** an individual, *pro se*<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF HURRICANE**, a municipality; **SCOTT EDWARDS, MAYOR** of the CITY OF HURRICANE, in his individual capacity; **CHIEF MICHAEL MULLINS, CHIEF OF HURRICANE POLICE DEPT.,** in his individual capacity; **CORPORAL BRETT JOHNSON, PATROLMAN W.D. ALLEN, PATROLMAN PAYTON CARR, SERGEANT MAKENZIE WHITE, DETECTIVE JONATHON PAYNE,** and **OFFICER JOHN DOES 1-10, INCLUSIVE,** in their individual capacities; and **ALYSON DENISON,** a worker for Child Protective Services, in her individual capacity<br><br>Defendants | **CASE NO:** 2:25-cv-11111   3:25-cv-00345<br><br>**COMPLAINT FOR DAMAGES<br>DEMAND FOR A JURY TRIAL**<br><br>**JUDGE:<br>MAGISTRATE:**<br><br>**FEDERAL CLAIMS UNDER 42 U.S.C. §1983**<br>1. INVALID SEARCH WARRANT – ALL DEFENDANTS<br>2. JUDICIAL DECEPTION – CORPORAL B JOHNSON<br>3. UNREASONABLE SEARCH (KNOCK AND ANNOUNCE) – ALL DEFENDANTS<br>4. COERCED ENTRY – ALYSON DENISON<br>5. MUNICIPAL LIABILITY (*MONELL*) – CITY OF HURRICANE<br>6. SUPERVISORY LIABILITY – MAYOR SCOTT EDWARDS AND HURRICANE CHIEF OF POLICE, MICHAEL MULLINS<br>7. SUBSTANTIVE AND PROCEDURAL DUE PROCESS – ALL DEFENDANTS<br><br>**STATE LAW CLAIMS UNDER 28 U.S.C §1367**<br>8. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) – DEFENDANT PATROLMAN PAYTON CARR;<br>9. IIED; – DEFENDANT DENISON;<br>10. IIED; - DEFENDANT PATROLMAN W.D. ALLEN<br>11/12. ASSAULT AND BATTERY – PLAINTIFF CLINTON SIMMONS AGAINST DEFENDANT PATROLMAN CARR<br>13. CONVERSION – ALL DEFENDANTS<br>14/15. TRESPASS TO REAL PROPERTY AND TRESPASS TO CHATTELS – ALL DEFENDANTS<br>16. PROFESSIONAL NEGLIGENCE – ALL DEFENDANTS |

---

1

**COMPLAINT FOR DAMAGES**
*SIMMONS & CORAM v. CITY OF HURRICANE, ET AL.*

**TO THE HONORABLE ABOVE-ENTITLED COURT:**

COME NOW the Plaintiffs, CLINTON AND TEARRIA SIMMONS, married couple, citizen residents of the state of West Virginia, *pro se*; MINOR CHILDREN A.B.P., O.S.S., and R.T.S., by and through their mother; and BILLY LEE CORAM, an individual, citizen resident of the state of West Virginia, *pro se*, (hereinafter, respectively, "PLAINTIFFS") seeking damages for multiple gross deprivations of their Constitutional Rights, pursuant to the Fourth, Fifth, and Fourteenth Amendments, in direct violation of 42 U.S.C. §§1983, as well as multiple state law claims that are tagging along, as this court has jurisdiction under federal law and statute, alleging as follows:

**STATEMENT OF JURISDICTION AND VENUE**

1. At all times relevant herein, the PLAINTIFFS were citizen residents of the CITY OF HURRICANE, in the state of West Virginia, Putnam County, located in the Southern district, and at all times relevant herein, all DEFENDANTS are believed to be citizen residents of the State of West Virginia and are employed in or are residents of the CITY OF HURRICANE OR PUTNAM COUNTY, located in the Southern district; as such, pursuant to 28 U.S.C. §1391, the Federal District Court for the Southern District of West Virginia, Huntington Division, has the authority to exercise personal jurisdiction over ALL PARTIES to this case.

2. As the court has original subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343(c), and the forum court is in the same judicial district where the incidents giving rise to the action occurred and where all the DEFENDANTS are believed to reside or are employed, pursuant to 28 U.S.C. §1391, venue is proper.

3. The subject matter of this action involves a federal question, namely, the gross deprivation of the PLAINTIFFS' Constitutional Rights, pursuant to 42 U.S.C. §1983, which

2

provides a remedy via cause of action in the Federal District Court for individuals who have had their Constitutional Rights violated or deprived of them by an individual acting under the color of state law. As such, pursuant to 28 U.S.C. §§1331 and 1343(c), this court has the authority to exercise original subject matter jurisdiction over each claim relevant to a question of Federal law or deprivation of civil rights.

4. Pursuant to 28 U.S.C. §1367, where a district court has original subject matter jurisdiction pursuant to 28 U.S.C. §1331, that court has the authority to exercise supplemental jurisdiction over state law claims which it typically would not have jurisdiction to hear, where those claims arise from a common nucleus of operative facts. State law claims alleged herein arise from the same incidents as those claims involving a question of Federal law.

## THE PARTIES

5. PLAINTIFFS CLINTON AND TEARRIA SIMMONS are citizen residents of the state of West Virginia, Putnam County. Their address is 18 Hurricane Creek Rd. Hurricane, 25526, in the Southern District of West Virginia.

6. PLAINTIFFS MINOR CHILDREN, A.B.P., O.S.S., AND R.T.S., by and through their mother, are citizen residents of the state of West Virginia, Putnam County, in the Southern District. Their mother will petition the court in the accompanying attachment for appointment as guardian ad litem. Their address is the same as their mother's and father's address.

7. PLAINTIFF BILLY LEE CORAM is a citizen resident of the state of West Virginia, Putnam County. His address is 18 Hurricane Creek Rd. Apt. B. Hurricane, 25526, in the Southern District of West Virginia.

8. Pursuant to the Federal Rules of Civil Procedure, Rule 19, a person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

    a. In that person's absence, the court cannot accord complete relief among existing parties; - or -

3

b. That person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may

    i. As a practical matter impair or impede the person's ability to protect the interest; - **or** –

    ii. Leave an existing party subject to a substantial risk of incurring double, multiple, otherwise inconsistent obligations because of the interest.

9. PLAINTIFF BILLY LEE CORAM is required to join this complaint for damages because his claims all arise from a common nucleus of operative facts as the claims brought by PLAINTIFFS CLINTON AND TEARRIA SIMMONS and their minor children and his interests, as they relate to the subject of this action, are so situated that disposing of the action in his absence would leave the DEFENDANTS subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

10. PLAINTIFF BILLY LEE CORAM is subject to service of process and his joinder will not deprive the court of subject matter jurisdiction, as that jurisdiction falls under 28 U.S.C. §§1331, 1343(c), because the subject matter involves a question of federal law, pursuant to 42 U.S.C. §1983, and civil rights violations.

11. PLAINTIFFS are informed and believe and, on that basis, allege that the CITY OF HURRICANE is a municipality of Putnam County, in the Southern District of the State of West Virginia.

12. PLAINTIFFS are informed and believe and, on that basis, allege that HURRICANE POLICE DEPT. is an administrative arm of the CITY OF HURRICANE, and when referred to herein the two are essentially *one and the same*.

13. PLAINTIFFS are informed and believe and, on that basis, allege that DEFENDANT SCOTT EDWARDS (hereinafter, "DEFENDANT EDWARDS") is the duly elected mayor of the CITY OF HURRICANE, West Virginia, and has been for the last seventeen (17) years. The allegations brought against him are brought in his individual capacity.

---

4

14. PLAINTIFFS reasonably believe that DEFENDANT EDWARDS lives in the CITY OF HURRICANE, Putnam County, in the state of West Virginia, in the Southern District, at an address unknown to the PLAINTIFFS at the present time. PLAINTIFFS are informed and subsequently believe that DEFENDANT EDWARDS is reachable in person or via postal mail at Hurricane City Hall, 3255 Teays Valley Rd., Hurricane, 25526, in the Southern District of the State of West Virginia.

15. DEFENDANT EDWARDS at all relevant times herein was and is MAYOR of the incorporated public entity known as the CITY OF HURRICANE, duly authorized and existing as such in and under the laws of the State of West Virginia; and at all times herein mentioned, DEFENDANT EDWARDS has possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the HURRICANE POLICE DEPT. and its tactics, methods, practices, customs and usage.

16. At all relevant times, the CITY OF HURRICANE was the employer of each "OFFICER" (e.g., Patrolman, Corporal, Sergeant, Detective, Chief…) DEFENDANT in this matter, and DEFENDANT EDWARDS has the legal duty to oversee and supervise the hiring, conduct, and employment of each OFFICER DEFENDANT in this matter.

17. PLAINTIFFS are informed and believe and, on that basis, allege that DEFENDANT CHIEF MICHAEL MULLINS (hereinafter, "DEFENDANT MULLINS") is the duly appointed Chief of Police of the HURRICANE POLICE DEPT., a municipal entity and administrative arm of the CITY OF HURRICANE, in the State of West Virginia, Putnam County, in the Southern District, being appointed as such in 2007, seventeen years ago.

18. PLAINTIFFS are informed and believe and, on that basis, allege that DEFENDANT MULLINS is a citizen resident of the state of West Virginia, at an address unknown to the PLAINTIFFS, and is employed at 3245 Teays Valley Road, Hurricane, 25526, in the Southern District of West Virginia. The claims alleged herein are brought against him in his individual capacity.

29. DEFENDANT MULLINS, as duly appointed CHIEF of the HURRICANE POLICE

5

DEPT., an administrative arm of the CITY OF HURRICANE, possesses the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the HURRICANE POLICE DEPT. and its tactics, methods, practices, customs and usage. At all relevant times herein, the CITY OF HURRICANE was the employer of each OFFICER DEFENDANT in this matter, and DEFENDANT MULLINS has the legal duty to oversee and supervise the hiring, conduct, and employment of each and every OFFICER DEFENDANT in this matter.

20. The PLAINTIFFS are informed and believe and, on that basis, allege that the DEFENDANTS named herein as CORPORAL BRETT JOHNSON, PATROLMAN PAYTON CARR, PATROLMAN W.D. ALLEN, SERGEANT MAKENZIE WHITE, and DETECTIVE JONATHON PAYNE, who are employed by the HURRICANE POLICE DEPT., (hereinafter, respectively, "DEFENDANTS,") are citizen residents of the state of West Virginia, living in the general area of and surrounding Putnam County, West Virginia, at addresses unknown to the PLAINTIFFS, and are employed at 3245 Teays Valley Road, Hurricane, 25526, in the Southern District of West Virginia. They are being held liable in their individual capacities.

21. PLAINTIFFS allege on their reasonable beliefs that the DEFENDANTS were duly authorized employees and agents of the CITY OF HURRICANE, WEST VIRGINIA, HURRICANE POLICE DEPT., subject to oversight and supervision by the CITY OF HURRICANE'S elected and non-elected officials, who were acting under color of law within the course and scope of their respective duties as police officers and within the complete authority and ratification of their principal, the CITY OF HURRICANE, WEST VIRGINIA, at all times relevant to this complaint for damages.

22. Claims which are brought against those DEFENDANTS who are fictitiously named herein as "OFFICER JOHN DOES 1-10, INCLUSIVE," (hereinafter, "DEFENDANT OFFICER DOES") whose true names and addresses are as yet "unknown" to the PLAINTIFFS, are reasonably believed to be citizen residents of the state of West Virginia, who live in the general area of and surrounding Putnam County, West Virginia, and are employed by or closely

---

6

affiliated with the HURRICANE POLICE DEPT., located at 3245 Teays Valley Road, Hurricane, 25526, and the CITY OF HURRICANE, in the Southern District of West Virginia.

23.  DEFENDANT OFFICER DOES are, herein, given fictitious names as the PLAINTIFFS are informed and believe and thereon allege that these DEFENDANT OFFICER DOES were duly authorized employees and agents of the CITY OF HURRICANE, WEST VIRGINIA, HURRICANE POLICE DEPT., subject to oversight and supervision by the CITY OF HURRICANE'S elected and non-elected officials, who were acting under color of law within the course and scope of their respective duties as police officers and within the complete authority and ratification of their principal, the CITY OF HURRICANE, WEST VIRGINIA.

24.  PLAINTIFFS hereby take leave to amend this Complaint to set forth the true names and identities of the unknown fictitiously named OFFICER DOE DEFENDANTS when they are ascertained.

25.  The PLAINTIFFS are informed and believe that the DEFENDANT named herein, ALYSON DENISON, CHILD PROTECTIVE SERVICES (also referred to as C.P.S.) WORKER, (hereinafter, respectively, "DEFENDANT DENISON,") is employed by the OFFICE OF CHILD AND ADULT SERVICES, BUREAU FOR SOCIAL SERVICES, WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, and is a citizen resident of the state of West Virginia, living in the general area of and surrounding Putnam County, West Virginia, at an address unknown to the PLAINTIFFS. Her employer's address is 112531 Winfield Road, Winfield, 25213, in Putnam County, in the Southern District of West Virginia.  She is being held liable in her individual capacity.

26.  PLAINTIFFS allege on their reasonable beliefs that DEFENDANT DENISON is a duly authorized employee and agent of the BUREAU FOR SOCIAL SERVICES, subject to oversight and supervision by the WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, who was acting under the color of law within the course and scope of her respective duties as a CHILD PROTECTIVE SERVICES (CPS) WORKER for the OFFICE OF CHILD AND ADULT SERVICES, and within the complete authority and ratification of

7

their principal.

## FACTUAL ALLEGATIONS

27.     In September 2024, PLAINTIFF CLINTON SIMMONS learned that he had an outstanding warrant for his arrest for failure to appear in court in Putnam County, W.Va. on misdemeanor charges.

28.     During that time, OFFICER DEFENDANTS named herein harassed PLAINTIFF TEARRIA SIMMONS and her minor children, accusing her of harboring her husband and threatening her with arrest and the involvement of Child Protective Services (CPS).

29.     On September 18, 2024, DEFENDANT PATROLMAN ALLEN threatened PLAINTIFF TEARRIA SIMMONS with charges of aiding and abetting and removal of her children if she did not allow a warrantless search of her home to look for her husband and intimidated the family, causing substantial distress, by standing on the porch knocking incessantly after PLAINTIFF TEARRIA SIMMONS closed the door, signaling the conversation was over. This occurred a second time in early October 2024, on a date PLAINTIFFS are unable to recall.

30.     On October 21, 2024, DEFENDANT ALYSON DENISON, a CPS worker, visited the PLAINTIFFS' home following an "anonymous" referral alleging abuse or neglect. DEFENDANT DENISON did not follow the standard CPS procedures, failing to inform PLAINTIFF TEARRIA SIMMONS of the family's rights or of the allegations made against them and failing to provide educational materials explaining the investigation process and services offered by CPS. DEFENDANT DENISON became hostile when PLAINTIFF TEARRIA SIMMONS denied entry without first consulting legal counsel and made judgmental and biased statements toward PLAINTIFF TEARRIA SIMMONS at that time.

31.    On October 22, 2024, DEFENDANT PATROLMAN PAYTON CARR served a warrant on PLAINTIFF TEARRIA SIMMONS, for unrelated incidents arising out of Kanawha County, at her residence while DEFENDANT DENISON waited across the street from the residence at a gas station. DEFENDANT DENISON approached the residence after PLAINTIFF TEARRIA SIMMONS was in custody and demanded to enter the residence for inspection or otherwise would be removing the children. Under duress, PLAINTIFF TEARRIA SIMMONS consented to a walkthrough, but only after the threats were made regarding the removal of her children, and under the condition that she accompany DEFENDANT DENISON during the walkthrough.

32.    After the walkthrough, now exhausted from the emotional exertion and still under significant duress, PLAINTIFF TEARRIA SIMMONS provided DEFENDANT PATROLMAN CARR with written consent to search her residence for the purpose of finding her husband.

33.    DEFENDANT PATROLMAN CARR then instructed another officer with HURRICANE POLICE DEPT., Patrolman Vickers, who is not named a party to this suit, to take PLAINTIFF TEARRIA SIMMONS to Magistrate Court to take care of the warrant while officers with HURRICANE POLICE DEPT. remained at the residence to conduct the search, despite PLAINTIFF TEARRIA SIMMONS protesting to the search occurring in her absence.

34.    During PLAINTIFF TEARRIA SIMMONS' absence, while conducting the search, DEFENDANT PATROLMAN CARR permitted or failed to prevent DEFENDANT DENISON accessing the interior of the home, without PLAINTIFFS' knowledge or consent, and allowed or failed to prevent her to make contact with the young children and ask questions of them without their parental guardians.

9

35.    PLAINTIFF CLINTON SIMMONS was not found in the home during the search conducted by HURRICANE POLICE DEPT. on October 22, 2024, and PLAINTIFF TEARRIA SIMMONS was released from custody upon arrival at Magistrate Court. The officer who took her to the Court provided PLAINTIFF TEARRIA SIMMONS with a ride back to her residence.

36.    On October 24, 2024, a SWAT team entered the PLAINTIFFS' residence without adhering to proper knock-and-announce procedures, executing a search warrant taken against PLAINTIFF TEARRIA SIMMONS, which the PLAINTIFFS believed was intended to search for and subsequently arrest PLAINTIFF CLINTON SIMMONS, who was found upstairs.

37.    The search warrant, dated October 22, 2024, was taken against PLAINTIFF TEARRIA SIMMONS the same day she provided DEFENDANTS, officers with the HURRICANE POLICE DEPT., with written consent to search and the same day on which a search was conducted at the residence, which resulted in no findings of criminal conduct, no criminal charges, nor any arrests.

38.    The search warrant lacked reasonable particularity and was invalid on its face, as it failed to put the PLAINTIFFS on reasonable notice of what items were allowed to be searched for and seized, where the officers could look for those items, and upon what grounds the officers believed they had enough evidence to demonstrate probable cause sufficient to support an application for a search warrant.

39.    The search warrant stated that the residence at 18 Hurricane Creek Rd. was the subject of the search. There was no search warrant for the upstairs apartment which PLAINTIFF BILLY LEE CORAM leases as his residence and which is clearly marked by a metal sign on the door which says, "No Trespassing, Private Property," nor was a search warrant served on PLAINTIFF BILLY LEE CORAM.

10

40.    PLAINTIFF CLINTON SIMMONS was located and arrested during the search and at the time of the arrest DEFENDANT PATROLMAN CARR punched him in his face and head multiple times.

41.    Also, during the search, OFFICER DEFENDANTS subjected the entire family, including the minor children, to verbal abuse, PLAINTIFF TEARRIA SIMMONS' phone, an Apple iPhone 11 pro max model with 256 gigabyte's storage capacity, was destroyed, and property belonging to PLAINTIFF BILLY LEE CORAM totaling approximately $250.00 was unlawfully seized. No charges resulted from the search warrant, although the property was never returned.

42.    The abusive comments made toward PLAINTIFF TEARRIA SIMMONS, in the presence of her minor children, were extreme and outrageous, of an especially harmful and offensive nature, and have caused the entire family to suffer from severe emotional distress.

43.    DEFENDANT DENISON later visited the jail, in another attempt to interview PLAINTIFF CLINTON SIMMONS, under coercive circumstances, but he refused to speak with her.

44.    PLAINTIFFS subsequently allowed DEFENDANT DENISON to return to their home and complete the interview during the first week of November 2024. The investigation revealed no indications of abuse or neglect, and the referral was closed as unsubstantiated on November 23, 2024.

45.    The incidents which occurred between September 18, 2024, and November 1, 2024, relating to the conduct of the DEFENDANT OFFICERS with the HURRICANE POLICE DEPT. and CPS Worker, DEFENDANT DENISON, caused significant emotional distress to all PLAINTIFFS, particularly the minor children, who now suffer from anxiety, fear, and psychological trauma relating to these incidents.

//

//

*SIMMONS & CORAM v. CITY OF HURRICANE, ET AL.* (2025)
COMPLAINT FOR DAMAGES, PURSUANT TO 42 U.S.C. §1983,
AND STATE CLAIMS PURSUANT TO 28 U.S.C. §1367; DEMAND FOR A JURY TRIAL

## LEGAL ALLEGATIONS AND CLAIMS FOR RELIEF

I.    **CLAIMS FALLING UNDER THE ORIGINAL JURISDICTION OF THIS COURT, PURSUANT TO 28 U.S.C. §§ 1331 AND 1343(c):**

### FIRST CAUSE OF ACTION

**UNREASONABLE SEARCH AND SEIZURE: INVALID SEARCH WARRANT, in Violation of The Fourth Amendment of The United States Constitution, Pursuant to 42 U.S.C. §1983;** Brought by all PLAINTIFFS against all DEFENDANTS, in their individual capacities, **EXCLUDING DEFENDANT DENISON**

46.  The factual allegations in paragraphs one through forty-five in this complaint are hereby reasserted and incorporated by reference as though fully set forth herein.

47.  Pursuant to 42 U.S.C. §1983, citizens who allege a deprivation of their civil rights by a person or persons acting under the color of the law or by governmental entity are entitled to bring a cause of action for damages against the offending parties in the Federal District Court.

48.  Reading in relevant part, 42 U.S.C. §1983 says:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, *subjects, or causes to be subjected*, any citizen of the United States or other person within the jurisdiction thereof *to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.*
> -    42 U.S.C. §1943 (emphasis added)

49.    Pursuant to 42 U.S.C. §1983, the presence of two (2) elements must be established for a party to bring a civil claim for deprivation of their Constitutional Rights. Those elements are:

i.    The depriving party [Defendant] was acting under the color of state law; **and**
ii.    He did, in fact, deprive the Plaintiff of his Constitutional Rights.

50. On October 24, 2024, the **DEFENDANTS, SCOTT EDWARDS, MAYOR, CHIEF MICHAEL MULLINS, CORPORAL BRETT JOHNSON, PATROLMAN PAYTON CARR, PATROLMAN W.D. ALLEN, SERGEANT MAKENZIE WHITE, DETECTIVE JONATHON PAYNE, AND OFFICER JOHN DOES 1-10, INCLUSIVE** were all duly-elected or duly-appointed officials or sworn officers with the DEFENDANT CITY OF HURRICANE, a municipality formed and operating under the laws of the state of West Virginia, and were acting under the scope of their duties and obligations as state actors; therefore, they were acting under the color of state law when they did serve upon PLAINTIFF TEARRIA SIMMONS a search warrant dated October 22, 2024, signed by a certain Magistrate Linda Hunt, of Putnam County, which was defective on its face and, therefore, invalid, in violation of each and every PLAINTIFFS' Constitutional Rights.

51. The Fourth Amendment of the Constitution of the United States of America guarantees each citizen the right to a reasonable expectation of privacy, the right to be free from unreasonable governmental intrusion, and the right to be free from unreasonable searches and seizures, reading:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, *and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and **particularly describing the place to be searched, and the persons or things to be seized."***
> - Fourth Amendment, U.S. Constitution (emphasis added)

52. The PLAINTIFFS, unfortunately, do not know what probable cause the warrant was issued on, because the face of the warrant, which was the only document which DEFENDANTS served upon PLAINTIFF TEARRIA SIMMONS during the execution of said warrant at her residence on October 24, 2024, only referred to attachments A, B, and C, and did not state with reasonable particularity or specificity any of the items to be searched for and seized, where the officers could

13

search for the items, or on what grounds the applicant had sufficient probable cause to be issued a search warrant for the residence.

53.   In fact, aside from the date, PLAINTIFF TEARRIA SIMMONS name, the name of the county, the PLAINTIFFS' complete address, the applicant's name (DEFENDANT CORPORAL BRETT JOHNSON) and signature, the Magistrate's signature, and see attachments "A/B/C," the only other words on the search warrant that are not a standard included typed part of the form are the words "white residence photo A," and literally nothing else.

54.   While the warrant may, or may not, have been issued on valid grounds, the PLAINTIFFS have no way to know that, or to know what areas the officers were permitted to search, nor what items they were permitted to seize.

55.   The warrant affidavit and complaint states only PLAINTIFF TEARRIA SIMMONS' name as the person on whom the complaint was being sworn against and under the section of the warrant asking *what unlawful offense **the person named on the warrant** had committed prior to the filing of the affidavit and complaint*, the document reads only "See Attachment A," and subsequently, no "Attachment A" is provided.

56.   Under the section of the warrant asking *what **particular** property the affiant reasonably believes is being kept/concealed/controlled/possessed and is designed for use in or is evidence of a crime and that is likely to be located during the search and thus is to be seized*, the document reads only, "See Attachment B," and subsequently, no "Attachment B" is provided.

*SIMMONS & CORAM v. CITY OF HURRICANE, ET AL.* (2025)
COMPLAINT FOR DAMAGES, PURSUANT TO 42 U.S.C. §1983,
AND STATE CLAIMS PURSUANT TO 28 U.S.C. §1367; DEMAND FOR A JURY TRIAL

57.   Under the section of the warrant asking *in what **particular** location the search for the named property is to be conducted,* the document reads only: "18 OLD HURRICANE CREEK RD. HURRICANE, PUTNAM COUNTY, WV WHITE RESIDENCE PHOTO A."

58.   Under the section of the warrant that asks *upon what **facts** the applicant believes that there is probable cause to search that location*, the document reads only, "See Attachment C," and subsequently, no "Attachment C" is provided.

59.   Though the search warrant's supporting affidavit may, or may not, list the types of items that the officers intended to seize, the specific location inside the residence in which the items were to be searched for, and the grounds on which DEFENDANT CORPORAL B. JOHNSON had probable cause to believe those particular items would be located in those particular areas within the residence, the search warrant itself did not describe any of that information and failed to include the referenced attachments. When an affidavit is needed to render the search warrant itself valid, the affidavit ***must be served*** on the person who is being searched ***at the time the warrant is served.***

60.   There is no evidence that the application or affidavit was brought along on the search, or that any of the officers performing the search had a copy of the attachments with them.

61.   DEFENDANT CORPORAL B. JOHNSON prepared the application for the warrant, but there is no evidence that he told anyone else who was to execute the search what it said or that any one of the DEFENDANTS conducting the search at the residence on October 24, 2024, were looking for any particular property to seize in any specific location. Rather, they searched each room, high and low, up and down, in closets, in drawers, under beds, in kitchen cabinets, in the bathroom, kitchen, and children's rooms, looking through each room of the residence carefully, taking nothing

---

15

obvious, and when asked what they were searching for or about the attachments describing the property to be seized, no one could answer sufficiently to demonstrate that they had knowledge of any particular item they were looking for or that the court had approved for seizure, telling the

PLAINTIFFS to ask DEFENDANT CORPORAL JOHNSON, as he had prepared the warrant.

62.    Each and every DEFENDANT in this matter had a duty to read the warrant and satisfy themselves as to its scope and that it was, in fact, a valid warrant, and by failing to do so they acted under the color of state law, and while so doing, deprived each and every PLAINTIFF of their Fourth Amendment rights. Additionally, DEFENDANT CITY OF HURRICANE, MAYOR SCOTT EDWARDS, AND CHIEF MICHAEL MULLINS are liable for this conduct, pursuant to the *Monell* Doctrine and the doctrine of supervisory liability.

63.    Each and every DEFENDANT acted willfully, wantonly, maliciously, or with reckless disregard to the Constitutional Rights of the PLAINTIFFS and knew, or reasonably should have known, that they were violating the PLAINTIFFS' Constitutional Rights but did so anyway, and therefore the imposition of exemplary and punitive damages is warranted here, with the exception of CITY OF HURRICANE.

64.    The PLAINTIFFS seek compensatory damages, pecuniary damages, exemplary or punitive damages (excluding CITY OF HURRICANE), and/or treble damages, in a reasonable amount to be determined at the time of trial, and/or any other such relief that this Court may deem to be just and proper.

65.    The PLAINTIFFS also request that any costs they may incur for this cause of action be paid by the DEFENDANTS.

*SIMMONS & CORAM v. CITY OF HURRICANE, ET AL.* (2025)
COMPLAINT FOR DAMAGES, PURSUANT TO 42 U.S.C. §1983,
AND STATE CLAIMS PURSUANT TO 28 U.S.C. §1367; DEMAND FOR A JURY TRIAL

## SECOND CAUSE OF ACTION

**UNREASONABLE SEARCH AND SEIZURE: JUDICIAL DECEPTION, in Violation of The Fourth Amendment of The United States Constitution, Pursuant to 42 U.S.C. §1983;** Brought by all PLAINTIFFS against DEFENDANT CORPORAL BRETT JOHNSON, a sworn officer with the HURRICANE POLICE DEPT., in his individual capacity, as well as DEFENDANTS CITY OF HURRICANE, MAYOR SCOTT EDWARDS, AND CHIEF MICHAEL MULLINS, in their individual capacities

66.    The factual allegations in paragraphs one through forty-five in this complaint are hereby reasserted and incorporated by reference as though fully set forth herein.

67.    Pursuant to 42 U.S.C. §1983, citizens who allege a deprivation of their civil rights by a person or persons acting under the color of the law or by governmental entity are entitled to bring a cause of action for damages against the offending parties in the Federal District Court, and must establish the same two elements as stated in the first cause of action, paragraphs forty-six through sixty-five.

68.    On October 22, 2024, **DEFENDANT CORPORAL BRETT JOHNSON, HURRICANE POLICE DEPT.**, a sworn officer in his individual capacity, did appear in person at the Magistrate Court in Putnam County, West Virginia, to affirm under oath the facts that served as probable cause for an application to be issued a search warrant, which he intended to execute against the PLAINTIFFS at the residence located at 18 Hurricane Creek Road, Hurricane.

69.    To obtain a search warrant, a law enforcement officer must show probable cause that a crime has been committed and that items related to that crime are likely to be found in the place specified in the warrant.

70.    In deciding whether to issue a search warrant, a judge generally relies on the facts stated in a warrant affidavit signed by a sworn law enforcement officer under penalty for perjury.

17

71.    In assessing whether a Defendant has violated a Plaintiff's rights under the Fourth Amendment by means of Judicial Deception, there are two factors to be considered:

    i.   Whether the Defendant submitted to a judge a warrant affidavit that contained one or more misrepresentations or omissions material to the finding of probable cause; **and**

   ii.   Whether the Defendant made those misrepresentations or omissions either intentionally or with reckless disregard for the truth.

72.    The Plaintiff must demonstrate that the judge would not have issued the warrant if the [false] information had been excluded (or redacted), or if the omitted or missing information had been included (or restored).

73.    For a search warrant application to be considered reasonable, the applicant must demonstrate that ***with all information known to him at such time in which he presents the application to the Court***, an objectively reasonable police officer would conclude there is a fair probability that contraband or evidence of a crime will be found in the place to be searched, a fair probability that the item to be seized is contraband or evidence of a crime, or a fair probability that the person to be seized has committed or was committing a crime.

74.    In the context of this claim, a "reckless disregard for the truth" means highly unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of misleading a reasonable judge into concluding that probable cause has been established, when that danger is either known to the Defendant or is so obvious that the Defendant must have been aware of it.

75.    On October 22, 2024, PLAINTIFF TEARRIA SIMMONS, consented to Patrolman Vickers walking through the residence in her presence, to conduct a visual inspection of said residence, and no contraband was immediately found at such time.

---

18

76.  Also on October 22, 2024, PLAINTIFF TEARRIA SIMMONS provided DEFENDANT PATROLMAN CARR and other agents or officers with the HURRICANE POLICE DEPT. with express, written consent to conduct a search of the residence for the sole purpose of locating her husband, PLAINTIFF CLINTON SIMMONS, who had an active warrant for failure to appear in court to answer to misdemeanor offenses. A search was conducted thereafter in accordance with the written consent and neither PLAINTIFF CLINTON SIMMONS nor any other contraband were located in the residence at such time.

77.  The PLAINTIFFS are unaware as to what explicit grounds DEFENDANT CORPORAL BRETT JOHNSON stated as evidence to support his claim that there was probable cause to be issued a search warrant for their residence because they have not been permitted to see the supporting affidavit or attachments.

78.  PLAINTIFFS reasonably believed that it was stated by DEFENDANT CORPORAL BRETT JOHNSON that he had special knowledge that a person who had committed a crime, namely PLAINTIFF CLINTON SIMMONS, and for whom there was an active warrant, was inside the residence. This would have been sufficient, reasonable grounds for probable cause **without** the additional context of the events that had unfolded at the residence on that very same day, likely only moments before DEFENDANT CORPORAL BRETT JOHNSON went to the Magistrate court in Putnam County to apply for the warrant, **and** if the only thing to be searched for and seized inside the residence on October 24, 2024, was PLAINTIFF CLINTON SIMMONS.

79.  There is no evidence to indicate that DEFENDANT CORPORAL BRETT JOHNSON, nor any other agent or officer with the HURRICANE POLICE DEPT., had any reason to believe PLAINTIFF CLINTON SIMMONS was inside the residence *after* conducting multiple searches

and visual walk-throughs of the residence on October 22, 2024, knowing that officers had failed to locate him at that time; nor is there any evidence that officers were specifically looking for any *other* evidence of a crime nor that they had probable cause to do so.

80.   It eludes the PLAINTIFFS as to how, after two separate law enforcement officers with the HURRICANE POLICE DEPT. had conducted walk-throughs and visual inspections of the residence and a search had been conducted, with the express and explicit written consent of PLAINTIFF TEARRIA SIMMONS, *on the very same date* in which DEFENDANT CORPORAL BRETT JOHNSON appeared at the Putnam County Magistrate Court to apply for the search warrant, DEFENDANT CORPORAL JOHNSON could assert that, *with all information known to him at such time in which he presented the application to the Court*, there was a high probability that PLAINTIFF CLINTON SIMMONS could be located inside the residence he had requested the search warrant for *if he provided the full truth and facts on the application.*

81.   When examining the totality of the facts, facts *known* to DEFENDANT CORPORAL BRETT JOHNSON at the time he applied for the search warrant, that on the same date he and other agents or officers with the HURRICANE POLICE DEPT. had received written consent to and subsequently did conduct a search of the residence and had located neither PLAINTIFF CLINTON SIMMONS nor any other contraband or evidence of a crime, no objectively reasonable police officer could have concluded that there was a fair probability that contraband or other evidence of a crime nor the persons accused of committing them, namely PLAINTIFF CLINTON SIMMONS, would be found in the place to be searched.

82.   There is no evidence or reason to believe that DEFENDANT CORPORAL BRETT JOHNSON, could affirm before the court, *with all information and facts known to him at the*

---

20

*time he applied for the search warrant,* under oath, that there was a fair probability that any items in the home would constitute contraband or evidence of a crime.

83.    There is additionally no evidence to demonstrate that a reasonably objective police officer would have concluded that there was a high probability that PLAINTIFF TEARRIA SIMMONS had committed or was committing a crime, considering the walkthroughs at the residence and the written consent she had provided, as well as the fact that Patrolman Vickers, an officer with the HURRICANE POLICE DEPT., had just taken PLAINTIFF TEARRIA SIMMONS to Magistrate Court to answer to a criminal complaint, and had subsequently taken her back to the residence after she was released from the court on bail, indicating that DEFENDANT CORPORAL BRETT. JOHNSON knew she was not wanted or suspected of the commission of any further criminal conduct or activity that could be discovered upon the execution of *yet another* search on the residence less than two full days later.

84.    PLAINTIFFS were subjected to so many searches, walkthroughs, and visual inspections of their residence, none of them which were desired by the PLAINTIFFS, in such a short period of time that additional searches became unreasonable, as any contraband or evidence of a crime should have been detected and addressed on at last one of the prior inspections of the home.

85.    DEFENDANT CORPORAL BRETT JOHNSON acted with a "reckless disregard for the truth;" his conduct was highly unreasonable and an extreme departure from ordinary care as the PLAINTIFFS reasonably believe that he intentionally misrepresented and omitted the fact that he, or other agents or officers with HURRICANE POLICE DEPT., had, on that same date, conducted walkthroughs and visual inspections and carried out a search at the same residence and located absolutely *no* evidence of a crime nor any illegal contraband.

21

86.  Had the Magistrate known the accurate facts and omissions, there is a high probability that she would not have issued the search warrant to the applicant, as it is unreasonable to think only a few hours later something different would now be present within the residence, and as it is unreasonable to subject citizens to so many such intrusions within such a short timeframe.

87.  DEFENDANT CORPORAL BRETT JOHNSON'S conduct presented a danger of misleading, and, in fact, did mislead a reasonable judge, namely Magistrate Linda Hunt, into concluding that probable cause had been established, and DEFENDANT CORPORAL BRETT JOHNSON knew, or reasonably should have known, that he would mislead her, because it is so obvious that he must have been aware of that fact. Additionally, DEFENDANTS CITY OF HURRICANE, MAYOR SCOTT EDWARDS, AND CHIEF MICHAEL MULLINS are liable for this conduct, pursuant to the *Monell* Doctrine and the doctrine of supervisory liability.

88.  DEFENDANT CORPORAL BRETT JOHNSON acted willfully, wantonly, maliciously, or with reckless disregard to the Constitutional Rights of the PLAINTIFFS and knew or should have reasonably known that he was violating PLAINTIFFS' Constitutional Rights but did so anyway, and therefore the imposition of exemplary and punitive damages is warranted, with the exception of CITY OF HURRICANE.

89.  The PLAINTIFFS seek compensatory damages, pecuniary damages, exemplary or punitive damages (excluding CITY OF HURRICANE), and/or treble damages, in a reasonable amount to be determined at the time of trial, and/or any other such relief that this Court may deem to be just and proper.

90.  PLAINTIFFS also request that any costs they may incur for this cause of action be paid by the DEFENDANT.

**THIRD CAUSE OF ACTION**

**UNREASONABLE SEARCH AND SEIZURE: VIOLATION OF THE KNOCK-AND-ANNOUNCE REQUIREMENT, Falling Under the Reasonableness Standard, in Violation of The Fourth Amendment of The United States Constitution, Pursuant to 42 U.S.C. § 1983; Brought by all PLAINTIFFS against ALL DEFENDANTS, in their individual capacities, EXCLUDING DEFENDANT DENISON**

91. The factual allegations in paragraphs one through forty-five in this complaint are hereby reasserted and incorporated by reference as though fully set forth herein.

92. Pursuant to 42 U.S.C. §1983, citizens who allege a deprivation of their civil rights by a person or persons acting under the color of the law or by governmental entity are entitled to bring a cause of action for damages against the offending parties in the Federal District Court, and are required to prove the same elements for such as set forth in the first cause of action, paragraphs forty-six through sixty-five, and second causes of action, paragraphs sixty-six through ninety, herein.

93. On October 24, 2024, the **DEFENDANTS, SCOTT EDWARDS, MAYOR, CHIEF MICHAEL MULLINS, CHIEF OF THE HURRICANE POLICE DEPT., CORPORAL BRETT JOHNSON, PATROLMAN PAYTON CARR, PATROLMAN W.D. ALLEN, SERGEANT MAKENZIE WHITE, DETECTIVE JONATHON PAYNE,** and **OFFICER JOHN DOES 1-10, INCLUSIVE,** were all employees, duly-elected, or duly-appointed officials of the DEFENDANT CITY OF HURRICANE, a municipality formed under the laws of the State of West Virginia, and were acting under the scope of their duties and obligations as state actors. They were, therefore, acting under the color of state law when they did enter the PLAINTIFFS' home via the rear entrance, without knocking and announcing their presence, and by entering without breaking, to serve a search warrant upon PLAINTIFF TEARRIA SIMMONS, in violation of the reasonableness standard of the Fourth Amendment of the U.S. Constitution.

94.  The Fourth Amendment of the Constitution guarantees us the right to a reasonable expectation of privacy in the home. Thus, even when a valid search warrant has been obtained, law enforcement officers must still adhere to certain requirements regarding the manner in which they are permitted to move forward with entry to the home and the subsequent search.

95.  One such requirement of law is that an agent or officer who arrives at a residence with the intention of conducting a legally valid search warrant at the residence cannot just force entry into the home; rather, they must still knock on the door, announce their presence to the homeowners or residents inside, and state their purpose. This is to allow the search to unfold with minimal disruption and to protect the rights and safety of homeowners and law enforcement officers alike and is part of the reasonableness standard of the Fourth Amendment.

96.  If the homeowner or resident does not hear the knock and announce or simply refuses to acknowledge the presence of law enforcement at their home and subsequently refuses to answer the door, law enforcement officers are required to wait a reasonable period of time before gaining entry into the residence via the use of force. The amount of time which is considered "reasonable" can only be determined by the individual facts and circumstances of each specific case.

97.  There are a few exceptions in which the knock and announce requirement may be said to not apply. These are:

  i.     When an officer is actively pursuing a suspect;
  ii.    If the officer reasonably believes that someone inside the residence is armed;
  iii.   If the officer reasonably believes that someone inside the residence will react violently; **or**
  iv.    If the officer reasonably believes that the suspect will destroy or attempt to destroy evidence.

98. Unless the situation clearly warrants a deviation, with a reason that can be clearly articulated, the knock and announce rule must be adhered to in order to fulfill the reasonableness standard of the Fourth Amendment, and because none of the above-noted exceptions apply to the case at hand, the DEFENDANTS had a duty under Constitutional law to knock on the door of the residence, announce their presence and intentions before entering, and if no one responded to them, to then wait a reasonable amount of time before forcing entry or gaining access to the residence in some other way.

99. In the matter at hand, when the DEFENDANTS arrived at the residence, they did not knock or announce their presence to the homeowners or residents until they were already inside of the home's kitchen, at which point they only then began yelling, "Search Warrant.

100. Prior to such time as the DEFENDANTS (or agents or officers acting on behalf of the DEFENDANTS), were standing in her kitchen, PLAINTIFF TEARRIA SIMMONS, who was sitting in the dining room, was oblivious to their presence on her property.

101. For context, the dining room is the midpoint between both the front and rear entrances of the residence and the home has an open-floorplan style, so it is immensely improbable that PLAINTIFF TEARRIA SIMMONS simply did not hear their knock and announcement, yet PLAINTIFF TEARRIA SIMMONS did not know law enforcement was present on her property, nor that they intended to enter the residence until such time as they were already inside.

102. The only persons who knew law enforcement was outside the residence and were attempting to gain entry to the home were the minor children and PLAINTIFF BILLY LEE CORAM, who was pulled off to the side of the home by DEFENDANT SERGEANT MAKENZIE WHITE, who pulled him off the rear deck by his arm and forced him to remain quiet, and whom did not have the authority to give consent to law enforcement to enter the main part of the home as he only resided in the upstairs

apartment and leased rights to use a portion of the basement, and who informing of their presence and intent to enter the main residence would not have been sufficient to meet the constitutional requirement for knocking and announcing their presence.

103.  The DEFENDANTS knew, or reasonably should have known through their training as law enforcement officers, that they were required to knock and announce their presence, even with a valid search warrant in hand, and that if they did not do so it would be in violation of the homeowners' Constitutional Rights and would place all parties involved at an unreasonable risk of harm, including the minor children who reside there.

104.  The DEFENDANTS did, in fact, deprive the PLAINTIFFS of their rights to a reasonable expectation of privacy in their home and the manner in which they conducted themselves rendered this search unsafe and unreasonable within the meaning of the Fourth Amendment of the U.S. Constitution. Additionally, DEFENDANTS CITY OF HURRICANE, MAYOR SCOTT EDWARDS, AND CHIEF MICHAEL MULLINS are liable for this conduct, pursuant to the *Monell* Doctrine and the doctrine of supervisory liability.

105. The DEFENDANTS acted willfully, wantonly, maliciously, or with reckless disregard to the Constitutional Rights of the PLAINTIFFS and knew, or should have reasonably known, that they were violating PLAINTIFFS' Constitutional Rights, but did so anyway, and therefore the imposition of exemplary and punitive damages is warranted, with the exception of the CITY OF HURRICANE.

106.  PLAINTIFFS seek compensatory, pecuniary, exemplary or punitive damages (excluding CITY OF HURRICANE), and/or treble damages, in a reasonable amount to be determined at the time of trial, and/or any other such relief as this Court may deem to be just and proper.

107. PLAINTIFFS additionally request that any costs they may incur for this cause of action be paid by the DEFENDANTS.

## FOURTH CAUSE OF ACTION

**UNREASONABLE SEARCH: COERCED ENTRY/INVALID CONSENT, in Violation of The Fourth Amendment of The United States Constitution, Pursuant to 42 U.S.C. § 1983; Brought by all PLAINTIFFS against DEFENDANT ALYSON DENISON, in her individual capacity**

108. The factual allegations in paragraphs one through forty-five in this complaint are hereby reasserted and incorporated by reference as though fully set forth herein.

109. Under 42 U.S.C. §1983, citizens who allege a deprivation of their civil rights by a person or persons acting under the color of the law or by governmental entity are entitled to bring a cause of action for damages against the offending parties in the Federal District Court, and are required to prove the elements for such as set forth in each of the above causes of action, paragraphs forty-six through one-hundred seven, herein.

110. **DEFENDANT ALYSON DENISON** is an employee of the West Virginia Department of Health and Human Resources, Bureau for Social Services, Office of Children and Adult Services, located at 12531 Winfield Rd. Winfield, in Putnam County, in the Southern District, where she is employed as a Child Protective Services worker. As such, she is a state actor, and as she was acting under the scope of her duties and obligations of employment, was acting under the color of state law during all times relevant to this Complaint.

111. DEFENDANT DENISON was told on October 21, 2024, upon her first visit to the PLANTIFFS' home, that she could not enter the residence, and that PLAINTIFF TEARRIA SIMMONS did not wish to continue answering her questions because she needed to speak with an attorney before completing the interview.

27

112. The *Child Protective Services Policy Handbook* (2022) sets out the procedures for child protective services workers throughout the referral and investigation process, offering services, and court processes, as well as mandatory conduct the employee must engage in to protect the rights of the families they encounter. It requires that the worker ask the family if they are represented by legal counsel at the time of the initial encounter ("initial," as it relates herein, meaning the first time the family meets the worker). If the family indicates that they do have an attorney, or wish to retain one, the worker is supposed to stop attempting to conduct the interview and not ask any further questions of the family until they receive consent from the family's attorney to do so, in accordance with the Gibson Decree. *Gibson v. Ginsberg*, 989 F. Supp. 772, 774 (S.D. W. Va. 1996).

113. DEFENDANT DENISON clearly had knowledge that the PLAINTIFFS wished to confer with an attorney because PLAINTIFF TEARRIA SIMMONS expressly told her so when she requested an opportunity to confer with counsel prior to completing the interview.

114. DEFENDANT DENISON, however, did not follow protocol for the situation as outlined in the *Child Protective Services Policy Handbook* (2022) or the U.S. Constitution and instead elected to continue trying to conduct an interview of the PLAINTIFFS and attempting to gain access to their home.

115. The *Child Protective Services Policy Handbook* (2022) additionally outlines the process for notifying the family of their rights and responsibilities during the investigation process. DEFENDANT DENISON did not comply with the protocol set forth in this handbook at any point during initial contact.

116. DEFENDANT DENISON did not inform the family of their right to be free from intrusion into their home, of the right to be informed of the allegations made against them, and did not inform them of those allegations upon initial contact. She did not inform them of their right to refuse services

nor did she inform them of their right to review the information collected during the investigation. She did not provide the family with any educational materials or of their right to consult with an attorney.

117. On October 22, 2024, after being told the day before that the PLAINTIFFS needed some time to confer with an attorney prior to allowing an interview to be conducted, DEFENDANT ALYSON DENISON took it upon herself to personally appear at the HURRICANE POLICE DEPT. and request background checks on the PLAINTIFFS and did inform DEFENDANT PATROLMAN PAYTON CARR at that time that she was aware of a warrant for PLAINTIFF TEARRIA SIMMONS' arrest.

118. The PLAINTIFFS are informed and reasonably believe that DEFENDANT DENISON's intent was that both PLAINTIFF parents of the three minor children named as PLAINTIFFS herein would be arrested and subsequently taken to jail, even if only for an hour or two, leaving the children with no party to provide care or supervision.

119. As DEFENDANT PATROLMAN PAYTON CARR approached the residence by vehicle to initiate the arrest of PLAINTIFF TEARRIA SIMMONS, DEFENDANT ALYSON DENISON followed him and parked her car at the gas station (Sheetz) across the street from the residence to conduct surveillance of the incident until such time as she saw PLAINTIFF TEARRIA SIMMONS being escorted from the residence, accompanied by DEFENDANT PATROLMAN CARR.

120. After being denied entry the day prior so that the PLAINTIFFS could consult an attorney, she placed the PLAINTIFF in a situation where she was under significant duress and threatened to take her children from the home if she did not permit her to conduct a full walkthrough and visual inspection of every room of the residence to ensure it would be safe for the children and to make sure an adult would be there to supervise them, despite DEFENDANT PATROLMAN CARR informing her that

29

PLAINTIFF BILLY LEE CORAM was present in the residence and would be watching the children for the short time PLAINTIFF TEARRIA SIMMONS would be gone.

121. DEFENDANT DENISON coerced PLAINTIFF TEARRIA SIMMONS into consenting to her search of the residence, intentionally causing her to feel as if she had no other choice but to allow the DEFENDANT to conduct an unreasonable and unnecessary search on her residence, a search that she would not have consented to had she not been under duress and, in fact, had refused to consent to the day prior.

122. PLAINTIFF TEARRIA SIMMONS was essentially told that she had to either waive her rights under the Fourth Amendment of the Constitution or have her children taken away from her. The only reason for the threatened removal of the children was because PLAINTIFF TEARRIA SIMMONS had to go to the courthouse to answer a misdemeanor complaint and not because there was any evidence of abuse or neglect of the children.

123. Only where valid consent is given may a search be conducted without a warrant and without probable cause.

124. A consent to search is valid if the search is "voluntary," which means it was free of coercion or duress. In order for the consent to be "voluntary" it must be free of coercion and also the consent must be made while knowing the right to refuse consent, limit the scope of consent, and/or withdraw consent at any time.

125. DEFENDANT DENISON knew, or reasonably should have known, that she was placing PLAINTIFF TEARRIA SIMMONS under immense duress and coercing her into granting access to the family's home and she knew, or reasonably should have known, that PLAINTIFF TEARRIA

30

SIMMONS did not want to grant her access to the home, at least not without an opportunity to first confer with an attorney, because she was informed of as much on the day prior.

126. DEFENDANT DENISON knew, or reasonably should have known, that obtaining consent from a party under duress ultimately would result in void and invalid consent and that without consent, any search performed would be one in violation of the homeowner's Fourth Amendment Rights.

127. Against Child Protective Services Policy, pursuant to the Gibson Decree (*Gibson v. Ginsberg*, 989 F. Supp. 772, 774 (S.D. W. Va. 1996)) and the *Child Protective Services Policy Handbook* (2022), DEFENDANT DENISON did not stop her pursuit of obtaining the interview upon being made aware of the PLAINTIFF having an attorney retained nor did she cease her efforts to gain access to the family's home.

128. DEFENDANT DENISON took it upon herself to decide that PLAINTIFF TEARRIA SIMMONS was not entitled to her procedural and substantive due process rights to consult with an attorney, to be informed of the allegations against her family, to being given proper notice of any action taken on part of the worker in the scope of her duties, and that PLAINTIFF TEARRIA SIMMONS was not entitled to her Fourth Amendment rights to a reasonable expectation of privacy in her home or to be free of unreasonable searches.

129. Because of some sort of biased or misinformed personal perception of the PLAINTIFFS, DEFENDANT DENISON did deprive each and every one of the PLAINTIFFS of their Constitutional Rights while acting under the color of state law, in direct violation of 42 U.S.C. §1983.

130. A social worker is not entitled to sacrifice a family's privacy and dignity to her own personal views of the parents.

31

131.  To the extent there is or may be a condition precedent to filing suit in the form of exhausting one's administrative remedies prior to the initiation of a civil suit, PLAINTIFFS did exhaust their administrative remedies, to the extent that those remedies were available to them.

132.  On October 22, 2024, PLAINTIFF TEARRIA SIMMONS did, in fact, file a formal complaint by calling the Client Services Hotline for the Bureau of Social Services, Department of Health and Human Resources. She informed the employee who answered the phone and took the complaint of the exact policy and page numbers in the *Child Protective Services Policy Handbook* (2022) which DEFENDANT DENISON failed to follow, and provided details as to how the employee was otherwise not in compliance with Child Protective Services policy.

133.  A supervisor by the name of Chad Blankenship called PLAINTIFF TEARRIA SIMMONS the day after the complaint was filed, October 23, 2024, but she missed the call. When she called back, she was unable to get through to the supervisor and called multiple times thereafter, to no avail. The supervisor never returned her call after that initial missed call, despite leaving many messages for him to do so and providing other methods of contact for him (as PLAINTIFF TEARRIA SIMMONS' usual device, the Apple iPhone 11 Pro Max, was not functional) including two alternative phone numbers and an email address.

134.  The findings of the complaint PLAINTIFF TEARRIA SIMMONS filed on October 22, 2024, with the Bureau are ***unknown*** to the PLAINTIFFS as of December 24, 2024, and the referral for allegations of neglect or abuse made against the family was closed as unsubstantiated on November 23, 2024.

135.  PLAINTIFFS have exhausted administrative remedies to the extent that they are available to them, as a reasonable inquiry into the next steps in administrative complaint or grievance procedure

revealed no substantive information as to how to proceed, and no official response was ever returned to her regarding her filed formal complaint, either in person, by postal mail, email, or telephonically. With the initial referral now closed, there is no further reason or need for the PLAINTIFFS to be in contact with a worker from the Bureau and there is no expectation of future communication between the parties.

136.  A reasonably competent person or public official should know the laws that govern their conduct.

137.  An official acts within their authority if the act in question, when performed for a proper purpose, falls within or is reasonably related to the outer perimeter of their duties, such that a "reasonably well-trained official would not have known that their conduct violated the law or that the conduct went well beyond the clearly established scope of the official's discretionary authority."

138.  A reasonably well-trained Child Protective Services worker would know that they are to adhere to the Policy Handbook established for them by their agency employer.

139.  A reasonably well-trained Child Protective Services worker would know that when a family requests an opportunity to speak with an attorney prior to the interview, that it is within the family's Constitutional Rights to do so, and that they must allow them the time they need, in accordance with their own policies and procedures as well as Federal law.

140.  A reasonably well-trained Child Protective Services worker would understand that a family experiences a multitude of emotions associated with the initial contact by a Child Protective Services worker regarding allegations of abuse or neglect and, therefore, why it is so important to provide the family with critical information and educational material, to help them better understand the process and procedure for investigating a referral, and to inform the family of their rights.

141.   A reasonably well-trained Child Protective Services worker would understand that a family has the right to decline any intrusion into their personal spaces and privacy, including refusing services offered to them, and that attempting to usurp that right is unethical and illegal.

142.   A reasonably well-trained Child Protective Services Worker would understand that placing a parent under the duress of the reasonable belief that if they don't comply with the worker's demands for them to waive their Constitutional Rights that they will have their children taken away from them due to unfounded allegations and their own personal bias or perceptions of the family, is unethical and illegal.

143.   A reasonably well-trained Child Protective Services worker would understand that going to the Police Department and requesting personal and confidential information about a family prior to conducting the initial interview because they requested some time to confer with their attorney, and arranging an attempt be rid of the parents for a time and to subsequently remove their children from their care, despite having no evidence that any abuse or neglect has occurred, is going beyond the scope of their authority and discretion as a child protective services worker, a state actor, is illegal, and is unethical.

144.   DEFENDANT DENISON knew, or reasonably should have known, that she was acting outside of the scope of her discretionary authority and the bounds of her role as a CPS worker because it is so obvious that she must have been aware of it.

145.   DEFENDANT DENISON acted willfully, wantonly, maliciously, or with reckless disregard to the rights of the PLAINTIFFS, and she knew, or should have reasonably known, that she was violating the PLAINTIFFS' Constitutional Rights but did so anyway, and therefore the imposition of exemplary and punitive damages is warranted.

146. The PLAINTIFFS seek compensatory, pecuniary, exemplary or punitive, and/or treble damages, in a reasonable amount to be determined at the time of trial, and/or any other such relief that this Court may deem to be just and proper.

147. PLAINTIFFS additionally request that any costs they may incur for this cause of action be paid by the DEFENDANT.

## FIFTH CAUSE OF ACTION

**MUNICIPAL LIABILITY FOR AN UNCONSTITUIONAL POLICY OR CUSTOM: INADEQUATE LAW ENFORCEMENT OFFICER AND PUBLIC OFFICIAL TRAINING POLICIES, CUSTOMS, TRADITIONS, PROCEDURES, AND/OR PRACTICES, Pursuant to 42 U.S.C. § 1983, brought under the *MONELL DOCTRINE;* Brought by all PLAINTIFFS against DEFENDANT CITY OF HURRICANE, a municipality of PUTNAM COUNTY, WEST VIRGINIA**

148. The factual allegations in paragraphs one through forty-five in this complaint are hereby reasserted and incorporated by reference as though fully set forth herein.

149. The PLAINTIFFS assert that the **DEFENDANT CITY OF HURRICANE**, a municipality of PUTNAM COUNTY, WEST VIRGINIA, through its Department, the HURRICANE POLICE DEPT., an administrative arm of the CITY OF HURRICANE, is liable for the acts or omissions of its employees, whom are state actors, and who, when acting pursuant to the policies, customs, practices, traditions, or procedures as established by the DEFENDANT CITY OF HURRICANE and its administrative arm, the HURRICANE POLICE DEPT., under the color of state law, violate or deprive individuals of their Rights under the United States Constitution, where those actors are not properly trained or supervised, due to the municipality's faulty and widespread unconstitutional policies, customs, practices, traditions, or procedures, pursuant to the *Monell* Doctrine (*Monell v. Department of Social Services*, 436 U.S. 658 (1978)) and 42 U.S.C. §1983, as outlined in each and every count in this complaint.

35

150. It has been held that a municipality cannot be held liable under the theory of *Respondeat Superior* for the actions of its employees alone. So, to bring a claim under the *Monell* Doctrine, the Plaintiff must demonstrate:

    i.   The violation of a constitutional right;
    ii.  By an official act;
    iii. That resulted from a "government policy or custom."

151. Mere allegations that a municipality has a policy or custom that violated a Plaintiff's rights are insufficient to hold a municipality liable under 42 U.S.C. §1983; rather, it must be proven that the policy or custom not only caused the complained-of Constitutional violation but exhibits a "deliberate indifference" to citizens' rights.

152. Plaintiffs can show a "governmental policy or custom" sufficient to establish municipal liability under *Monell* in one of four ways. Plaintiffs can allege:

    a.  The existence of a formal policy which is officially endorsed by the municipality;
    b.  Actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights;
    c.  A practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; **or**
    d.  A failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

153. Here, the PLAINTIFFS allege that their Constitutional Rights were clearly violated by officers, employees, officials, or agents acting on behalf of the municipality in the above-stated COUNTS ONE THROUGH THREE, due to the municipality's unconstitutional policies, practices, customs, or traditions.

154. The PLAINTIFFS additionally assert that, according to the publicly available website for the DEFENDANT CITY OF HURRICANE, its administrative arm, the HURRICANE POLICE DEPT.,

employs a staff consisting of "eighteen sworn officers and two K9 officers, as well as two civilian staff members."

155.  Out of the eighteen sworn officers and two K9 officers, at least one of the two K9 officers, namely, DEFENDANT SERGEANT MAKENZIE WHITE, as well as the CHIEF OF THE HURRICANE POLICE DEPT., CHIEF MUCHAEL MULLINS, sworn officers CORPORAL BRETT JOHNSON, PATROLMAN PAYTON CARR, PATROLMAN W.D. ALLEN, DETECTIVE JONATHON PAYNE, two officers who are not named as parties to this suit, namely Patrolman Vickers and Patrolman Burton, and as many as four to eight other officers employed by HURRICANE POLICE DEPT., CITY OF HURRICANE, were at the residence on October 24, 2024, during the execution of the search warrant.

156.  This evidences that somewhere between ten and fourteen of the eighteen law enforcement officers employed by the HURRICANE POLICE DEPT., DEFENDANT CITY OF HURRICANE, were present, plus one K9 Officer, and of those ten to fourteen, between ten and twelve law enforcement officers with the HURRICANE POLICE DEPT. actively participated in the execution of the illegal and invalid search warrant at the PLAINTIFFS' residence on October 24, 2024.

157.  Well over half of the employed agents or officers of the HURRICANE POLICE DEPT., acting as law enforcement officers for the DEFENDANT CITY OF HURRICANE, under the color state law, assisted in the execution of a search warrant, in which they failed to read the content of the search warrant they were acting on to determine its sufficiency and scope and to ensure it was not obviously defective, either because they simply did not care whether the warrant was defective, did not know the components of a valid search warrant and therefore found it to be sufficient, or because they were content to just take someone else's word for it.

.

---

37

158. In addition to these law enforcement officers, the CHIEF OF THE HURRICANE POLICE DEPT., CHIEF MICHAEL MULLINS, although he did not enter the residence, did make an appearance in the PLAINTIFFS' driveway while the search was underway and made no move to stop or cease the activities, giving an obvious greenlight for the officers to continue their conduct.

159. In a later interaction between PLAINTIFF TEARRIA SIMMONS and DEFENDANT PATROLMAN PAYTON CARR, PLAINTIFF TEARRIA SIMMONS asked him if he was aware that the search warrant executed on her home on October 24, 2024, was invalid. He adamantly insisted it was not.

160. The fact is that DEFENDANT PATROLMAN CARR had likely never even read the search warrant or even believed he needed to read it. It is highly plausible that, considering the facts herein, the other OFFICER DEFENDANTS were of the same attitude and belief, as they were trained such.

161. DEFENDANT PATROLMAN CARR asserted that West Virginia law overrules any federal law or any decisions by the Supreme Court that would require them to provide the homeowner with those attachments when they are needed to make the warrant valid on its face, and that pursuant to West Virginia law, just serving them a piece of paper which says "See Attachments," but has no attachments, is sufficient. It is highly plausible that, considering the facts herein, the other OFFICER DEFENDANTS were of the same attitude and belief, as they were trained such.

162. On October 24, 2024, while outside on the sidewalk awaiting the completion of the search warrant on his home with DEFENDANT CHIEF MULLINS, CHIEF OF THE HURRICANE POLICE DEPT., PLAINTIFF CLINTON SIMMONS asked DEFENDANT CHIEF MULLINS to see a copy of the search warrant. DEFENDANT CHIEF MULLINS informed him that his wife had the warrant, and

38

went on to further assert that they didn't have to provide the homeowners with a copy of the warrant or even allow them to see it.

163. These facts do not indicate that it is *merely possible* that the widespread policies, customs, traditions, practices, and procedures of the HURRICANE POLICE DEPT., an administrative arm of the DEFENDANT CITY OF HURRICANE demonstrate a deliberate indifference to the PLAINTIFFS' Constitutional rights and that those policies, customs, traditions, practices, and procedures did, in fact, cause the employees of the DEFENDANT CITY OF HURRICANE to deprive the PLAINTIFFS of or violate the PLAINTIFFS' Constitutional Rights; these facts indicate that it is *more than plausible* that the DEFENDANT CITY OF HURRICANE knew, or should have reasonably known, that their employees were being trained improperly and that such improper and inadequate training and knowledge would surely result in the gross deprivation or violation of individuals' Constitutional Rights, yet they took no corrective action to stop the spread of such unconstitutional policies, customs, traditions, practices, and procedures, even after an established pattern of such behavior became apparent.

164. Where it may be difficult to say whether a custom or policy of a municipality or municipal entity or a widespread custom or tradition of the same is the leading force behind the blatant violation of an individual's Constitutional Rights in situations where a single actor or a mere two to three actors' conduct is in question, where three quarters of the Police Department and its CHIEF are all clearly aware of the conduct, if not actively engaging in it themselves, and not one of them moves to question the Constitutionality of their actions, it is clearly not a single, isolated, or sporadic instance of unconstitutional conduct; rather, it is quite clear that the entirety of the Department has been trained to believe their conduct is appropriate and that the inadequate training, policies, and widespread customs

and traditions of the municipality or municipal entity are the obvious leading force behind the gross violations of the citizens' civil rights. Entities such as this, which fail to provide adequate training to its employees, agents, or officers *should* be held liable for those acts committed by the employees, agents, or officers acting on its behalf.

165. These facts indicate that a failure of policymakers to establish proper and adequate training policies, practices, procedures, customs, and traditions or to properly train or supervise their subordinates amounts to a "deliberate indifference" to the rights of those who come in contact with the municipal employees, agents, or officers, and that there is a very high degree of plausibility that those municipal employees, agents, or officers are, as a result of their inadequate training and supervision, going to violate and deprive the individuals they come in contact with of their rights under the United States Constitution, just exactly as these officers with the HURRICANE POLICE DEPT., administrative arm of the DEFENDANT CITY OF HURRICANE, have done to the PLAINTIFFS.

166. DEFENDANT CITY OF HURRICANE did act maliciously, wantonly, or with a reckless disregard to the Constitutional Rights of the PLAINTIFFS, and they knew, or reasonably should have known, that employees, agents, or officers acting under the color of state law on their behalf were violating the PLAINTIFFS' Constitutional Rights but did nothing to stop the spread of the customs, policies, traditions, procedures or practices that caused their employees, agents, or officers to behave in such a manner, or to properly train and supervise those employees, agents, or officers; therefore, a finding of municipal liability under the *Monell* Doctrine and pursuant to 42 U.S.C. §1983, is warranted.

167. PLAINTIFFS seek monetary pecuniary or compensatory damages, in a reasonable amount to be determined at the time of trial, and/or any other such relief that this Court may deem to be just and proper.

168. PLAINTIFFS also request that any costs they may incur for this cause of action be paid by the DEFENDANT.

## SIXTH CAUSE OF ACTION

**SUPERVISORY LIABILITY for the Unconstitutional Conduct of Subordinates Acting Under the Color of The Law, Pursuant to 42 U.S.C. §1983; Brought by all PLAINTIFFS against SCOTT EDWARDS, MAYOR, CITY OF HURRICANE, and CHIEF MICHAEL MULLINS, CHIEF OF HURRICANE POLICE DEPT., in their individual capacities.**

169. The factual allegations in paragraphs one through forty-five in this complaint are hereby reasserted and incorporated by reference as though fully set forth herein.

170. The PLAINTIFFS assert that **DEFENDANTS MAYOR SCOTT EDWARDS** and **CHIEF MICHAEL MULLINS, CHIEF OF POLICE**, both fill supervisory positions within the municipality of the CITY OF HURRICANE and HURRICANE POLICE DEPT., positions they have both presided over since 2007, taking their positions simultaneously, nearly two decades ago now.

171. Pursuant to 42 U.S.C. §1983, citizens who have had their Constitutional Rights deprived by a state actor can hold those responsible liable for damages by bringing a cause of action against them.

172. In cases where there is a superseding force or a dominating actor, agency, administration, or municipality, which failed to detect, prevent, cease, or otherwise stop the deprivation of Constitutional Rights, those tasked with the supervision of the depriving party can also be held liable, pursuant to 42 U.S.C. §1983.

173. *Respondeat Superior* or "vicarious liability" theories are not available under 42 U.S.C. §1983. In order to bring a claim under the doctrine of supervisory liability, as it is available, pursuant to 42 U.S.C. §1983, the Plaintiff must demonstrate:

    i. The supervisory Defendant acted under color of state law;
    ii. The actions or failure to act of the supervisory Defendant's subordinate deprived the Plaintiff of particular rights under the laws of the United States Constitution; **and**

41

iii. The supervisory Defendant directed his subordinates in the acts or lack of action that led to the deprivation of the Plaintiff's Constitutional Rights.

-OR -

iv. Supervisory Defendant set in motion a series of acts by subordinates, or else knowingly refused to terminate a series of acts by subordinates, that the supervisor knew, or reasonably should have known, would cause the subordinates to deprive the Plaintiff of their civil rights;

-OR -

v. The supervisory Defendant knew that the subordinates were engaging in these acts and knew, or reasonably should have known, that the subordinate's conduct would deprive the Plaintiff of their civil rights; **and**

vi. The supervisory Defendant failed to act to prevent the subordinates from engaging in such conduct;

-OR -

vii. The supervisory Defendant disregarded the known or obvious consequence that a particular training deficiency or omission would cause his subordinates to violate the Plaintiff's Constitutional Rights; **and**

viii. That deficiency or omission actually caused the subordinates to deprive the Plaintiff of their Constitutional Rights;

-OR -

ix. The supervisory Defendant engaged in conduct that showed a reckless or callous indifference to the deprivation by the subordinate of the rights of others;

-AND -

x. The supervisory Defendant's conduct was so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

174. A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation.

175. The deprivation of Constitutional Rights has already been clearly articulated and established in Counts One through Five of this Complaint.

176. In this case, supervisory DEFENDANT, CHIEF MICHAEL MULLINS, CHIEF OF POLICE, HURRICANE POLICE DEPT., **_knowingly refused to terminate_** a series of acts by subordinates, that DEFENDANT CHIEF MULLINS knew, or reasonably should have known, as two-decade-running celebrated CHIEF OF HURRICANE POLICE DEPT., would cause his subordinates to deprive

42

PLAINTIFFS of their Constitutional Rights; and, his conduct was so closely related to the deprivation of the PLAINTIFFS' rights as to be the moving force that caused the ultimate injury.

177.   One would reasonably believe that the CHIEF of a Municipal Police Department, after seventeen years, surely would have a solid and thorough understanding of the Constitutional Rights of the people he has taken an oath to protect and serve, and that he would ascertain those Rights are being protected when engaging in Constitutionally-protected activities, such as conducting search warrants. One would believe that when witness to the blatant and obvious deprivation of those citizens' Constitutional Rights, the CHIEF OF POLICE would, of all people, be quick to react and respond, to identify his subordinate's unconstitutional conduct, and take affirmative action to correct it promptly, carefully considering the consequences of his actions, especially for others, and the actions of his subordinates as well.

178.   Yet, on the day of October 24, 2024, while the search warrant, which was served invalid on its face and which was executed so poorly a three-ring circus could have done it better, was executed, the DEFENDANT CHIEF MULLINS, CHIEF OF POLICE, HURRICANE POLICE DEPT., was waiting on the sidewalk as PLAINTIFF CLINTON SIMMONS was detained and brought outside the residence, and then supervised the handcuffed PLAINTIFF on the front walkway as the search was completed.

179.   PLAINTIFF CLINTON SIMMONS asked DEFENDANT CHIEF MULLINS for a copy of the search warrant which was currently being executed on his residence and the DEFENDANT CHIEF MULLINS informed him that his wife had the warrant, then went on to further assert that they didn't have to provide the homeowners with a copy of the warrant or even allow them to see it at all.

180.   Not only did DEFENDANT CHIEF MULLINS make no move to cease or terminate the actions of his subordinates as they violated the PLAINTIFFS' Constitutional Rights, but he affirmed the legality and lawfulness of their actions through his own conduct. His conduct could be easily interpreted as directing the conduct of his subordinates, refusing to terminate the inappropriate conduct of his subordinates, disregarding the known and obvious consequences of inadequate training regimens, and/or acting with a callous indifference toward the rights of those harmed by his subordinates as a direct result of deficient training.

181.   The supervisory DEFENDANT CHIEF MULLINS knew that his subordinates were engaging in these acts and knew, or reasonably should have known, as a long-standing, seasoned, and celebrated CHIEF and the supervisor of this department, that his subordinate's conduct would deprive the PLAINTIFFS of their civil rights; **and** the supervisory DEFENDANT CHIEF MULLINS, failed to act to prevent his subordinates from engaging in such conduct; in fact, did not indicate that there was anything wrong with the manner in which his subordinates were handling the situation, and, in fact, took no affirmative corrective action before, during, or after the incidents occurred.

182. The supervisory DEFENDANT CHIEF MULLINS' conduct was so closely related to the deprivation of the PLAINTIFFS' rights as to be the moving force that caused the ultimate injury. As the supervisory official, it was his responsibility to ensure that his subordinates knew what information was required to apply for a valid and reasonable search warrant, what parts of the warrant face, application, and affidavit needed to be served upon the property owners at the time of the search in order to render the warrant valid on its face, the manner and conduct in which his officials should behave when executing a search warrant on a citizen's private property in order to protect the rights and safety of his subordinates and the citizens.

183.   The failure of DEFENDANT CHIEF MULLINS, long-standing and celebrated CHIEF OF HURRICANE POLICE DEPT., to cease and terminate the conduct of his subordinates, either because he did not know or did not care that those acts were depriving the PLAINTIFFS of their Constitutional Rights, where he reasonably should have known and acted to cease that conduct which his subordinates were engaging in that was depriving the PLAINTIFFS of their Rights demonstrates a reckless disregard for the PLAINTIFFS' Rights and warrants the imposition of supervisory liability pursuant to 42 U.S.C. §1983.

184.   In the case of DEFENDANT SCOTT EDWARDS, MAYOR, CITY OF HURRICANE, in his celebrated, long-standing tenure as MAYOR, DEFENDANT EDWARDS is well-seasoned and has played a substantial role in the development, establishment, supervision, and implementation of the training customs, practices, procedures, and policies that impact the HURRICANE POLICE DEPT., CITY OF HURRICANE, during the seventeen years he has served as MAYOR of the CITY OF HURRICANE.

185.   After seventeen years of serving the CITY OF HURRICANE as MAYOR, DEFENDANT EDWARDS knows, or reasonably should know, which training practices, procedures, and customs are ineffective and inadequate and which training practices, procedures, and customs place citizens of the CITY OF HURRICANE at risk of having their Rights deprived, especially after a pattern of similar behavior is established, as is evidenced by other, similar causes of action filed within this Court, and this is not the first time allegations such as these have been asserted against the Department and City.

186.   SCOTT EDWARDS, MAYOR, CITY OF HURRICANE, the supervisory DEFENDANT, disregarded the known or obvious consequence that a particular training deficiency or omission would

*SIMMONS & CORAM v. CITY OF HURRICANE, ET AL.* (2025)
COMPLAINT FOR DAMAGES, PURSUANT TO 42 U.S.C. §1983,
AND STATE CLAIMS PURSUANT TO 28 U.S.C. §1367; DEMAND FOR A JURY TRIAL

cause his subordinates to violate PLAINTIFFS' Constitutional Rights **and** that deficiency or omission *actually caused* his subordinates to deprive the PLAINTIFFS of their Constitutional Rights;

187.  It is the duty and responsibility of the MAYOR, supervisory DEFENDANT SCOTT EDWARDS, to detect and correct training deficiencies that would cause his subordinates to engage in conduct that violates the Constitutional Rights of the PLAINTIFFS, but DEFENDANT EDWARDS failed to do so.

188. DEFENDANT EDWARDS' failure to detect and correct the training deficiencies implemented and established by himself and DEFENDANT CHIEF MULLINS, HURRICANE POLICE DEPT., constitutes a reckless disregard for the Constitutional Rights of the PLAINTIFFS, and that disregard did cause the PLAINTIFFS to be deprived of these Rights. The DEFENDANTS acted wantonly, willfully, and with reckless disregard to the Rights of the PLAINTIFFS. Therefore, the imposition of supervisory liability is appropriate and warranted in this case.

189.  Having demonstrated supervisory liability of DEFENDANTS MAYOR EDWARDS AND CHIEF MULLINS, the PLAINTIFFS hereby seek monetary and compensatory damages, punitive or exemplary damages, pecuniary damages, and/or treble damages, in an amount to be determined at the time of trial, and/or any other such relief that this Court may deem to be just and proper.

190.  PLAINTIFFS also request that any costs they may incur for this cause of action be paid by the DEFENDANTS.

## SEVENTH COUNT
**SUBSTANTIVE AND PROCEDURAL DUE PROCESS VIOLATIONS, Under the Fifth and Fourteenth Amendments of the U.S. Constitution, Pursuant to 42 U.S.C. §1983; Brought by ALL PLAINTIFFS against ALL DEFENDANTS, in their individual capacities**

191.  The factual allegations in one through forty-five in this complaint are hereby reasserted and incorporated by reference as though fully set forth herein.

46

192.  Pursuant to 42 U.S.C. §1983, citizens who allege a deprivation of their civil rights by a person or persons acting under the color of the law or by a governmental entity are entitled to bring a cause of action for damages against the offending parties in the Federal District Court, and are required to prove the same elements as are set forth in Counts One through Five of this complaint.

193.  The PLAINTIFFS have a fundamental right, pursuant to the Fifth and Fourteenth Amendments, to Due Process of the law.

194.  The Fifth Amendment reads, in relevant part:

> "...Nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."
> Fifth Amendment's Due Process Clause, U.S. Constitution

195.  The Fourteenth Amendment reads, in relevant part:

> "...No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
> Fourteenth Amendment's Due Process Clause, U.S. Constitution

## A.  SUBSTANTIVE DUE PROCESS VIOLATIONS

196.  Substantive due process is intended to keep citizens safe from unnecessary or unreasonable government interference and/or intrusions.

197.  Regarding **DEFENDANT ALYSON DENISON, DEFENDANT PATROLMAN W.D. ALLEN,** and **DEFENDANT PATROLMAN PAYTON CARR**, and relative to the factual allegations and claims asserted herein, these Amendments have been interpreted to mean that the PLAINTIFFS have a fundamental right to be free from coercive state interference, absent substantiated evidence of abuse or neglect.

198. A substantive due process claim arises when governmental actions or interferences exceed the boundaries of what is permitted in the Constitution. Substantive due process limits this interference or intrusion upon certain protected liberties.

199. Where there are "extended opportunities to do better," but instead the actor unreasonably allows harm to occur, then their "protracted failure even to care" can shock the conscience, thus giving rise to a substantive due process claim.

200. Here, DEFENDANT DENISON unreasonably allowed harm to occur by threatening PLAINTIFF TEARRIA SIMMONS after she had been placed under substantial duress, knowing that doing so would result in her consenting to the search she was seeking to obtain, allowing the PLAINTIFFS to sacrifice their Constitutional Rights, to be subjected to numerous violations of their family's private living spaces, as well as subjected the children to an unreasonable and substantial fear that they would be taken from their parents, a fear that implanted itself so deeply as to cause a lasting impact on these children – something that has been evidenced many times over as an unfortunate result of Child Protective Services investigations.

201. In this case, DEFENDANT DENISON violated the PLAINTIFFS' Substantive Due Process Rights, by threatening to remove the minor children from their parents' custody, without probable cause or substantiated evidence, in violation of the Fourteenth Amendment.

202. DEFENDANT PATROLMAN W.D. ALLEN violated the PLAINTIFFS' substantive due process rights by threatening to call Child Protective Services to have the children removed from the home, even though he knew that the children were not being abused or neglected and that they were, in fact, properly loved and well-provided for; and when he likely did make true on his word and refer the

family to DEFENDANT DENISON for a Child Protective Services investigation, based on totally unfounded and unsubstantiated allegations of abuse and neglect.

203. DEFENDANT PATROLMAN CARR violated the PLAINTIFFS' substantive due process rights by collaborating with DEFENDANT DENISON to violate the PLAINTIFFS' Constitutional Rights and thereafter enabling DEFENDANT DENISON as she further violated their rights by coercing and intimidating PLAINTIFF TEARRIA SIMMONS.

204. Additionally, DEFENDANT PATROLMAN CARR knew, or reasonably should have known, that directing Patrolman Vickers to transport PLAINTIFF TEARRIA SIMMONS to the courthouse before officers and agents with the HURRICANE POLICE DEPT. were finished conducting their search of the residence and while DEFENDANT DENISON was still present at the home, with the children and PLAINTIFF BILLY LEE CORAM, and then allowing DEFENDANT DENISON to have access to the children and entry to the home, in PLAINTIFF TEARRIA SIMMONS' absence, while the children's custodial guardians and the property owners were not present, would deprive the PLAINTIFFS of their Due Process Rights.

205. On October 22, 2024, as a direct result of DEFENDANT DENISON'S, DEFENDANT PATROLMAN W.D. ALLEN'S, and DEFENDANT PATROLMAN CARR'S actions in taking unreasonable risks that they knew, or reasonably should have known, could and would harm the children and parents, they intentionally interfered in the PLAINTIFFS' lives, unreasonably so, and violated the PLAINTIFFS' Constitutional Rights to Due Process of Law, pursuant to the Fifth and Fourteenth Amendments, causing substantial harms.

## B. PROCEDURAL DUE PROCESS RIGHTS: VIOLATIONS OF PROCEDURAL REQUIREMENTS

206.    Procedural due process rights, as incorporated into the United States Constitution via the Fifth and Fourteenth Amendments' Due Process Clauses, are carefully crafted and interpreted to protect individuals from the government taking any action against them without first giving them proper notice and then giving them ample opportunity to present their side of the situation in fair proceedings.

207.    Procedural Requirements are "procedures" which must be adhered to prior to an actor being permitted to take an action.

208.    In this case, **DEFENDANT ALYSON DENISON** had multiple procedural requirements, which she *did not* adhere to, in violation of the PLAINTIFFS' Due Process rights (*See*, Count Four of this Complaint). Some of those requirements are as follows:

  i.    According to the *Child Protective Services Policy Handbook* (2022), upon initial contact with a family, the worker is to inform the family of their rights during and throughout the referral and investigation process, provide them with educational materials, inform them of the allegations being made against them, advise them of the process the worker must follow to complete the investigation, and ask the family if they are represented by or wish to retain an attorney, and, if so, ask if they wish to confer with an attorney prior to completing any more of the interview process.

  ii.   The *Child Protective Services Policy Handbook* (2022) requires the worker to request consent to continue the interview process from a family's attorney if they are represented by one or wish to retain representation prior to the interview being completed, pursuant to the Gibson Decree. *Gibson v. Ginsberg*, 989 F. Supp. 772, 774 (S.D. W. Va. 1996).

  iii.  Prior to conducting a search of the residence, DEFENDANT DENISON was required to obtain voluntary consent from the family. Voluntary consent can only be made where it is known as to the fact that it can be refused, that the consenting party can limit the scope of the consent, or that the consent can be withdrawn at any time and for any reason. Coerced consent is not valid consent.

  iv.   Child Protective Service workers are to remain impartial and unbiased about the family's socioeconomic status, race, gender, sexuality, family dynamics, employment, income levels, ages, etc. during the interview process, so that they may conduct a thorough and complete investigation that presents an accurate and objective portrait of the family.

50

209.  DEFENDANT DENISON failed to adhere to the *Child Protective Services Policy Handbook* (2022) as established by the Division of Adult and Child Services, Bureau for Social Services, W.Va. Dept. of Health and Human Resources, for workers employed for Child Protective Services. In failing to adhere to their established policies and procedures and going well beyond the bounds of her discretionary duty, she also violated the PLAINTIFFS' Procedural Due Process Rights.

210.  **DEFENDANT CORPORAL BRETT JOHNSON** had multiple procedural requirements, which he did not adhere to, in violation of the PLAINTIFFS' Due Process rights. Some of those requirements are:

    a.  To complete a warrant application and a supporting affidavit truthfully stating all relevant facts known to him at the time the application is filed.

    b.  To not exaggerate or omit facts so as to deceive a reasonable judge into believing that probable cause existed when it did not.

    c.  To ensure that the person to be seized, property to be seized, places where the officers need to search, and the reasons for the necessity of conducting a search are all stated with reasonable particularity on the warrant and where that information is only stated on the affidavit or application to incorporate those documents by reference into the warrant and then    to include the attachments and serve them upon the individual named on the warrant at the time the warrant is executed.

    d.  To ensure that every officer and subordinate who would be assisting in the execution of the warrant had a copy of it, knew its scope and limitations, what property could be seized and where to look for it, and to ensure that the property owner/residents received a copy of the warrant at the time of its execution.

    e.  To ensure that upon arrival at the residence to execute the warrant, that the officers complied with the reasonableness standard of the Fourth Amendment and knock and announce their presence and intent to conduct a search, and if no one answers to then wait a reasonable time before gaining entry otherwise.

211.  DEFENDANT CORPORAL JOHNSON failed to adhere to the procedural requirements established by the United States Constitution, federal statutes, state statutes, local rules of court, and

local statues. In failing to adhere to the established policies and procedures as well as state and federal laws, he subsequently violated the PLAINTIFFS' Procedural Due Process Rights.

212. **DEFENDANTS PATROLMAN PAYTON CARR, PATROLMAN W.D. ALLEN, SERGEANT MAKENZIE WHITE, DETECTIVE JONATHON PAYNE, and OFFICER JOHN DOES 1-10, INCLUSIVE** had many procedural requirements, which they did not adhere to, violating the PLAINTIFFS' Due Process Rights. Some of those requirements are:

1. DEFENDANTS had a requirement to read the search warrant and ensure that they understood its scope and limitations, the probable cause, what items could be searched for and seized and where those items could be located.
2. They were required to ensure that the search warrant had the included and incorporated attachments attached, and that the warrant was not obviously defective on its face.
3. They additionally had a requirement to knock and announce their presence and intent to conduct a search upon arrival at the residence and to wait a reasonable amount of time for someone to answer the door, pursuant to the Fourth Amendment of the U.S. Constitution, prior to gaining entry to the home otherwise.

213. DEFENDANTS PATROLMAN PAYTON CARR, PATROLMAN W.D. ALLEN, SERGEANT MAKENZIE WHITE, DETECTIVE JONATHON PAYNE, AND OFFICER JOHN DOES 1-10, INCLUSIVE, violated the procedural requirements for executing a search warrant and knocking and announcing their presence and intent prior to gaining entry to the residence being searched, and in so doing they violated the PLAINTIFFS' Procedural Due Process Rights.

214. As such, DEFENDANTS are liable to the PLAINTIFFS for Substantive and Procedural Due Process violations, pursuant to the Fifth and Fourteenth Amendments and in violation of 42 U.S.C. §1983. The PLAINTIFFS each sustained significant damages as a result of the gross violations of their Constitutional Rights and, as such, they are entitled to relief. Additionally, DEFENDANTS CITY OF

HURRICANE, MAYOR SCOTT EDWARDS, AND CHIEF MICHAEL MULLINS are also liable for this conduct pursuant to the *Monell* Doctrine and the doctrine of supervisory liability.

215.   PLAINTIFFS hereby seek compensatory, pecuniary, exemplary or punitive (excluding CITY OF HURRICANE), and/or treble damages, in an amount to be determined at the time of trial, or any such other relief that this Court may deem to be just and proper.

216. PLAINTIFFS also request that any costs they may incur for this cause of action be paid by the DEFENDANTS.

## II.   STATE LAW CLAIMS IN ACCORDANCE WITH THE RESTATEMENT OF TORTS (2d), BROUGHT UNDER SUPPLEMENTAL JURISDICTION, PURSUANT TO 28 U.S.C. §1367

### EIGHTH CAUSE OF ACTION

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, Pursuant to West Virginia Tort Law and the Restatement of Torts (2d) §46; brought by ALL PLAINTIFFS against DEFENDANTS PATROLMAN PAYTON CARR, CITY OF HURRICANE, MAYOR SCOTT EDWARDS, AND CHIEF MICHAEL MULLINS, in their individual capacities**

217. The factual allegations in paragraphs one through forty-five in this complaint are hereby reasserted and incorporated by reference as though fully set forth herein.

218.   This court has supplemental jurisdiction over this claim, pursuant to 28 U.S.C. §1367, as the court has original jurisdiction over a claim arising from a common nucleus of operative facts, a claim which involves a question of federal law, and therefore, accompanying state law claims, such as this one, can tag along. Venue is proper as this is the jurisdiction in which the incidents giving rise to these claims occurred.

219.   The PLAINTIFFS assert that on October 24, 2024, **DEFENDANT PATROLMAN PAYTON CARR** did engage in extreme and outrageous, intentional conduct which has caused the PLAINTIFFS,

three of whom are minor children, ages nine, five, and three, to suffer from severe emotional distress, such that it manifests itself via physical symptomatology.

220.  To be successful in a claim for intentional infliction of emotional distress, the following elements must be proven:

    i.  The DEFENDANT did engage in intentional conduct;

    ii.  The conduct was extreme and outrageous, such that it goes beyond the bounds of human decency, and that the average reasonable citizen would find it intolerable or proclaim it to be outrageous; and

    iii.  The conduct caused severe emotional distress, more than mere hurt feelings or upset, but such that the average reasonable person would be unable to cope with it.

221.  During the incidents on October 22, 2024, and October 24, 2024, DEFENDANT PATROLMAN CARR did engage in calculated and intentional tactics to elicit emotional distress and responses to that emotional distress. Those extreme and outrageous tactics include:

    a.  Refusing to allow PLAINTIFF TEARRIA SIMMONS to provide a measure of comfort to her distressed children, minor PLAINTIFFS A.B.P., O.S.S., and R.T.S. by closing the door to the residence, so they didn't have to be witness their father's arrest.

    b.  Calling PLAINTIFF TEARRIA SIMMONS offensive and derogatory names, such as "stupid" and "retarded bitch" in the presence of the minor children, A.B.P., O.S.S., and R.T.S., one of whom has a biological mother that has been diagnosed as mildly mentally retarded.

    c.  Telling PLAINTIFF TEARRIA SIMMONS that he did not care about her children while in their presence and within their range of hearing.

    d.  Breaking PLAINTIFF TEARRIA SIMMONS' cellular device as a way to prevent her from recording his behavior, to further isolate the PLAINTIFFS, and to prevent PLAINTIFF CLINTON SIMMONS from being able to call his family from jail, causing harm to the familial relationship.

    e.  Collaborating with DEFENDANT DENISON to engage in acts that further violated the PLAINTIFFS' Constitutional Rights, including conspiring with her to arrest PLAINTIFFS CLINTON AND TEARRIA SIMMONS simultaneously on October 22, 2024, when they went to the home together, despite having no substantiated evidence of abuse or neglect and, in fact, knowing that the children were well provided for, after

learning that both parents had warrants for misdemeanor offenses that required their presence in Magistrate Court.

   f.  Enabling DEFENDANT DENISON to coerce the PLAINTIFFS to waive their Constitutional rights and permit her to search the residence.

   g.  Instructing Patrolman Vickers with the HURRICANE POLICE DEPT. to take PLAINTIFF TEARRIA SIMMONS to the Magistrate, prior to the completion of the search on PLAINTIFFS' residence, leaving her children and tenant at the residence with law enforcement and DEFENDANT DENISON, whom he subsequently permitted to enter the residence in PLAINTIFF'S absence and whom he allowed to ask questions of the minor children without their guardian's knowledge or consent.

   h.  Hitting/Punching PLAINTIFF CLINTON SIMMONS in and about his face and head during the arrest on October 24, 2024, despite the fact that he was already in handcuffs and was not struggling or resisting arrest otherwise and then bragging about that fact to PLAINTIFF TEARRIA SIMMONS, in the presence and within the range of hearing of the couple's minor children.

   i.  Refusing to check the tightness of PLAINTIFF CLINTON SIMMONS' handcuffs after being informed that they were too tight and, in fact, laughing about it.

222. PLAINTIFF A.B.P. has endured many life experiences that render her vulnerable. At only nine-years-old, she is acutely aware of her biological mother's intellectual disability and finds the greatest offense in derogatory words used to defame, insult, or "make fun of" those with intellectual disabilities.

223. DEFENDANT PATROLMAN CARR was aware children were present but yet took no action to cease, reduce, or modify his conduct and/or language so that it was marginally less offensive, derogatory, or harmful to the children.

224. The standard of scrutiny is very high as to what sort of behavior constitutes extreme and outrageous conduct. The behavior must be intolerable to a civilized society. DEFENDANT PATROLMAN CARR'S conduct, as described by the factual allegations herein, rises to that standard.

225. The facts herein indicate that DEFENDANT PATROLMAN CARR knew his conduct was causing harm, or he reasonably should have known that it was, and that he, in fact, intended to cause such harm to PLAINTIFFS.

*SIMMONS & CORAM v. CITY OF HURRICANE, ET AL.* (2025)
COMPLAINT FOR DAMAGES, PURSUANT TO 42 U.S.C. §1983,
AND STATE CLAIMS PURSUANT TO 28 U.S.C. §1367; DEMAND FOR A JURY TRIAL

226. The average reasonable person would certainly find derogatory remarks about a disability or disabled individual to be extreme, when the remarks are made in the presence of and directed toward a child, the behavior goes from shocking and extreme to outrageous, such that the average reasonable person would surely proclaim this conduct to be "Outrageous!," but when made in the presence of a child whose mother is disabled with the very condition he is making fun of and insulting, to the child's parental guardian, the conduct exceeds well beyond the bounds of human decency and crosses into utterly intolerable.

227. Although it is most likely that DEFENDANT PATROLMAN CARR did not know PLAINTIFF TEARRIA SIMMONS' biological sister, PLAINTIFF A.B.P.'s biological mother, is diagnosed with mild mental retardation, he did know, or reasonably should have known, that calling PLAINTIFF TEARRIA SIMMONS stupid and a retarded bitch in front of her young children, even without the fact that her sister has a severe intellectual disability, was a highly unethical, reprehensible, offensive, and insulting choice of behavior, which is the exact reason he was conducting himself in such a manner to begin with: with the intent to cause harm, offense, anger, distress, and upset. Additionally, DEFENDANTS CITY OF HURRICANE, MAYOR SCOTT EDWARDS, AND CHIEF MICHAEL MULLINS are liable for this conduct, pursuant to the *Monell* doctrine and the doctrine of supervisory liability.

228. The emotional distress experienced by the minor children, PLAINTIFFS A.B.P., O.S.S., and R.T.S. is apparent in their behavior during the events and their reaction to the outrageous conduct, namely, their devastation and visible upset during the incident such as crying and sobbing, faces growing very red, fists and teeth clenched, and/or heavy breathing.

229.. PLAINTIFF A.B.P. has suffered from extreme emotional distress since the incident on October 24, 2024. She has suffered from low self-esteem, and her distress has resulted in an almost obsessive-compulsive worry about being "retarded" that has manifested in physical symptoms such as nausea and vomiting, nail biting, lip chewing, chewing on her hair, changes in appetite and weight fluctuations, sleep disturbances, and even hair loss.

230. PLAINTIFFS CLINTON AND TEARRIA SIMMONS and PLAINTIFF BILLY LEE CORAM have all experienced an extreme level of guilt regarding the pain and trauma caused to the children by these incidents and their inability to console the children during the incidents or to protect the children from these harms, and this emotion rises to more than simply a mere upset, but is a distress such that it has manifested itself in physical symptomatology, and is such that the average reasonable person would be unable to cope with it.

231. Having plead herein the elements of a claim for intentional infliction of emotional distress, PLAINTIFFS hereby seek compensatory, pecuniary, exemplary or punitive (excluding CITY OF HURRICANE), and/or treble damages, in a reasonable amount to be determined at the time of trial, and/or any such other relief that this Court may deem to be just and proper.

232. PLAINTIFFS also request that any costs they may incur for this cause of action be paid by the DEFENDANTS.

## NINTH CAUSE OF ACTION
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, Pursuant to West Virginia Tort Law and the Restatement of Torts (2d) §46; Brought by ALL PLAINTIFFS against DEFENDANT ALYSON DENISON, in her individual capacity.**

233. The factual allegations in each of the above paragraphs in this complaint are hereby reasserted and incorporated by reference as though fully set forth herein.

234. This court has supplemental jurisdiction over this claim, as outlined in paragraph two-hundred eighteen in this complaint.

235. To be successful here, the same elements as those set forth in the eighth cause of action, paragraphs two-hundred seventeen through two-hundred thirty-two, must be established.

236. **DEFENDANT ALYSON DENISON**, acting under the color of state law and in her capacity as a Child Protective Services worker, engaged in extreme and outrageous conduct, far exceeding the scope of her discretionary authority as a CPS worker and in violation of the PLAINTIFFS' Constitutional Rights.

237. DEFENDANT DENISON'S extreme and outrageous behavior can be demonstrated by the following factual allegations:

a. Failing to adhere to proper Child Protective Services policies and procedures, including failing to disclose the allegations made about the family and not informing them of their rights during the referral process at the point of initial contact.

b. Refusing to respect the PLAINTIFFS' decision to confer with their attorney prior to completing the interview, as is their right and her obligation to allow.

c. Collaborating with DEFENDANT PATROLMAN CARR to wait at the gas station across the street from the PLAINTIFFS' residence while he made contact with the residents and initiated the arrest of PLAINTIFFS CLINTON AND TEARRIA SIMMONS, so that she could then drive over as they exited the house, with the belief that she would then need to remove the children from the home, as there would be no adult to care for them, despite the events not unfolding accordingly.

d. Coercing PLAINTIFF TEARRIA SIMMONS, under duress, into waiving her Constitutional Rights and threatening to take the children from the home if the PLAINTIFF did not grant her consent to conduct a thorough walkthrough and visual inspection of each room of the residence, including a private, upstairs apartment leased by PLAINTIFF BILLY LEE CORAM.

e. Entering the PLAINTIFFS' residence after PLAINTIFF TEARRIA SIMMONS had been transported to the Magistrate Court, on more than one occasion, on October 22, 2024, and making inquiries of the children, without the knowledge or consent of their guardians or the homeowners.

238. DEFENDANT DENISON'S initial conduct was intended to coerce consent to a search of the home, a search that PLAINTIFFS reasonably believed they were entitled to refuse under the Fourth Amendment, and which the PLAINTIFFS did not desire to consent to without a prior opportunity to confer with their attorney in regard to the matter at hand.

239. DEFENDANT DENISON knew, or reasonably should have known, that her conduct would cause extreme emotional distress to the PLAINTIFFS, as follows:

    i.   *PLAINTIFFS CLINTON AND TEARRIA SIMMONS* - as parents threatened with the loss of their children, and as citizens who felt that they had no choice but to waive their Constitutional Rights or lose their children, despite not wanting to have their privacy, integrity, and dignity invaded by someone who was essentially a stranger.

    ii.  *The minor PLAINTIFFS, A.B.P., O.S.S., and R.T.S.* - as innocent children exposed to DEFENDANT DENISON'S threats, facing severe anxiety and trauma due to the potential removal from their home and parents, and who also had to cope with the invasion into their private living spaces and intrusive questioning tactics.

    iii.  *PLAINTIFF BILY LEE CORAM* – as someone caught in the line of fire for no good reason. A loved one and resident at the home who was distressed over his inability to prevent the harm caused to the other PLAINTIFFS, who he views as his children and grandchildren, respectively, in addition to being forced into opening his own private residence to DEFENDANT DENISON, when he was not ever mentioned in the referral for allegations of neglect and/or abuse and where he paid a monthly rental amount for a private living quarters within the residence and had a reasonable expectation that that living space would be private and secure.

240. As a direct and proximate result of DEFENDANT DENISON'S actions, PLAINTIFFS have suffered:

    1.   Severe emotional distress, including anxiety, guilt, depression, humiliation, self-isolating behaviors, and loss of trust in governmental authorities or entities.

    2.   Physical symptoms, such as panic attacks, sleep disturbances, and appetite changes, including weight loss, nausea, and more, as detailed in the factual allegations.

---

241. DEFENDANT DENISON'S conduct was extreme and outrageous, beyond the bounds of human decency, and was such that it is utterly intolerable in a civilized society; her conduct was also willful, wanton, malicious, and in reckless disregard of PLAINTIFFS' rights, justifying an award of punitive or exemplary damages.

242. PLAINTIFFS have each experienced an extreme level of distress regarding the pain and trauma caused to them, their children, and their loved ones by these incidents and their inability to protect one another from these harms; the distress is more than simply a mere upset, but is such that it has manifested itself in physical symptomatology and is such that the average reasonable person would be unable to cope with it.

243. Having established the elements of a claim for intentional infliction of emotional distress against DEFENDANT DENISON, PLAINTIFFS request a judgment in their favor for compensatory, pecuniary, treble, and/or exemplary or punitive damages, in a reasonable amount to be determined at the time of trial, and/or any other such relief that this Court may deem to be just and proper.

244. PLAINTIFFS also request that any costs they may incur for this cause of action be paid by the DEFENDANT.

## TENTH CAUSE OF ACTION

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, Pursuant to West Virginia Tort Law and the Restatement of Torts (2d) §46; Brought by ALL PLAINTIFFS against DEFENDANTS PATROLMAN W.D. ALLEN, CITY OF HURRICANE, MAYOR SCOTT EDWARDS, AND CHIEF MICHAEL MULLINS, in their individual capacities**

245. The factual allegations in paragraphs one through forty-five in this complaint are hereby reasserted and incorporated by reference as though fully set forth herein.

246. This court has the authority to exercise supplemental jurisdiction over this claim, as outlined in paragraph two-hundred eighteen in this complaint.

247. To be successful in a claim for intentional infliction of emotional distress, the PLAINTIFFS must sufficiently plead the same elements as set forth in the eighth cause of action, paragraphs two-hundred seventeen through two-hundred thirty-two, and ninth cause of action, paragraphs two-hundred thirty-three through two-hundred forty-four, in this complaint.

248. The PLAINTIFFS assert that on multiple occasions in September and October, 2024, one such occasion being September 18, 2024, **DEFENDANT PATROLMAN W.D. ALLEN,** did engage in extreme and outrageous, intentional conduct which caused the PLAINTIFFS, three of whom are minor children, aged nine years old, five years old, and three years old, to suffer from severe emotional distress, such that the average reasonable person would be unable to cope with it.

249. DEFENDANT PATROLMAN ALLEN was at the PLAINTIFFS' residence to ascertain the whereabouts of PLAINTIFF CLINTON SIMMONS, and at that time, DEFENDANT PATROLMAN ALLEN used extreme and outrageous tactics in an attempt to convince PLAINTIFF TEARRIA SIMMONS to disclose the location where PLAINTIFF CLINTON SIMMONS could be found or give him access to search her residence.

250. Those extreme and outrageous tactics involved:

 i.  Threatening PLAINTIFF TEARRIA SIMMONS with arrest for her inability to produce someone who was not present.

 ii. Threatening to call Child Protective Services and have PLAINTIFF TEARRIA SIMMONS' children taken away from her, despite seeing no signs of abuse or neglect and, in fact, knowing the children were well provided for, and even though she was doing nothing wrong or illegal except reasonably exercising her Fourth Amendment right to privacy in her home.

 iii. Considering the time of the arrival of DEFENDANT DENISON into the entire picture as detailed in the factual allegations, it is highly likely and the PLAINTIFFS, therefore, reasonably believe that DEFENDANT PATROLMAN ALLEN did, in fact, contact Child

Protective Services and make unsubstantiated and, frankly, false allegations of abuse and neglect with no evidence to substantiate such beliefs and with a purely malicious intent to cause harm to the PLAINTIFFS and retaliate against them for PLAINTIFF CLINTON SIMMONS' perceived evasion of their efforts to arrest him and PLAINTIFF TEARRIA SIMMONS' assertion of her Constitutional Rights, defying their authority.

iv.  Standing on the home's front porch, knocking incessantly at the door and yelling into the residence, after already having made contact with PLAINTIFF TEARRIA SIMMONS and ascertaining that PLAINTIFF CLINTON SIMMONS was not present and having no other good or excusable purpose to be at the residence, for the sole purpose of harassing, intimidating, and inciting fear and upset in the PLAINTIFFS, including the minor children.

v.  On about eight of the ten occasions in which PLAINTIFFS BILLY LEE CORAM and A.B.P. did leave the house to walk across the street to the gas station, Sheetz, between September 18, 2024, and October 22, 2024, they were stopped upon exiting the store by officers with the HURRICANE POLICE DEPT., including DEFENDANT PATROLMAN ALLEN, and PLAINTIFF BILLY LEE CORAM was required to produce an identification card before being subjected to an unreasonable and unnecessary warrant check. They would then be permitted to cross the street to their residence, which is located approximately three hundred feet from the gas station.

251.  The emotional distress experienced by the minor children, PLAINTIFFS A.B.P., O.S.S., and R.T.S. is apparent in their behavior during the events and their reaction to the outrageous conduct, especially during the time DEFENDANT PATROLMAN ALLEN was beating on the door incessantly after he threatened to take the children from their mother and after she had closed the door on him and retreated into the residence.

252.  The level of emotional distress as experienced by the PLAINTIFFS is so severe that they are experiencing physical symptomatology, including panic attacks and anxiety, shortness of breath, trembling and shaking, nausea and vomiting, loss of appetite, weight changes, and other physical

---

62

discomforts or symptoms that stem from emotional distress, as outlined in the other counts and factual allegations herein.

253. As DEFENDANT PATROLMAN ALLEN'S conduct was intentional, extreme, and outrageous, and that conduct resulted in severe emotional distress for the PLAINTIFFS, including physical symptomatology or manifestations of such distress (that are no longer a requirement for the tort but demonstrate the severity of the level of distress experienced), the required elements of intentional infliction of emotional distress have been demonstrated. Additionally, DEFENDANTS CITY OF HURRICANE, MAYOR SCOTT EDWARDS, AND CHIEF MICHAEL MULLINS are liable for this conduct pursuant to the *Monell* Doctrine and the doctrine of supervisory liability.

254. Having plead herein the elements of a claim for intentional infliction of emotional distress against DEFENDANT PATROLMAN ALLEN, PLAINTIFFS hereby seek compensatory, pecuniary, treble, and/or exemplary or punitive (excluding CITY OF HURRICANE) damages, in a reasonable amount to be determined at the time of trial, and/or any such other relief that this Court may deem to be just and proper.

255. PLAINTIFFS also request that any costs they may incur for this cause of action be paid by the DEFENDANTS.

## ELEVENTH AND TWELVTH CAUSES OF ACTION

**ASSAULT AND BATTERY: Pursuant to West Virginia Tort Law and the Restatement of Torts (2d) §§21, 24, 27, 13, 16, 18, and 19; Brought by PLAINTIFF CLINTON SIMMONS against DEFENDANTS PATROLMAN PAYTON CARR, CITY OF HURRICANE, MAYOR SCOTT EDWARDS, AND CHIEF MICHAEL MULLINS, in their individual capacities.**

256. The factual allegations in paragraphs one through forty-five in this complaint are hereby reasserted and incorporated by reference as though fully set forth herein.

---

63

257. This court has supplemental jurisdiction over this claim, as outlined in paragraph two-hundred eighteen of this complaint.

258. An assault occurs when an actor intentionally places another individual in reasonable apprehension of imminent harmful or offensive physical contact.

259. A battery occurs when an actor intentionally causes harmful or offensive physical contact with another individual.

260. Here, PLAINTIFF CLINTON SIMMONS was on the second floor of the residence on Hurricane Creek where officers and agents of the HURRICANE POLICE DEPT. served a search warrant on his wife, PLAINTIFF TEARRIA SIMMONS, on the afternoon of October 24, 2024.

261. PLAINTIFF CLINTON SIMMONS was working in and out of the crawlspaces in his homes upper level, checking and making repairs to ductwork after their natural gas service had been turned off for the summer season and had only just been turned back on that morning.

262. PLAINTIFF CLINTON SIMMONS did have an active arrest warrant.

263. When officers and agents with the HURRICANE POLICE DEPT. entered the residence, PLAINTIFF CLINTON SIMMONS was trying to squeeze himself out when DEFENDANT SERGEANT WHITE started attempting to pull him out.

264. PLAINTIFF CLINTON SIMMONS was finally able to get through the entry and into the bedroom closet area, where SERGEANT WHITE was there to quickly grab him and yank him out of the closet and into the room.

265. PLAINTIFF CLINTON SIMMONS was slammed face first onto the bed by a number of officers, such that he couldn't precisely say how many it was. DEFENDANT SERGEANT WHITE was handcuffing him, and he heard **DEFENDANT PATROLMAN CARR** laughing and jeering just before

he saw a fist coming toward him out of the corner of his eye and realized that he was going to be hit in the face and was totally unable to defend himself.

266.  Just then, DEFENDANT PATROLMAN CARR'S fist made contact with PLAINTIFF SIMMONS face, once, twice, and a possible third time but PLAINTIFF CLINTON SIMMONS was so ruffled at that time that he cannot say with certainty that the DEFENDANT'S fist made contact with his face for a third consecutive time, a fact DEFENDANT PATROLMAN CARR bragged about after the fact, both to other DEFENDANT OFFICERS and to PLAINTIFF'S wife and children.

267. When PLAINTIFF CLINTON SIMMONS could see DEFENDANT PATROLMAN CARR'S fist coming toward his face out of the corner of his eye and realized that the fist was going to make contact with his face and that he was unable to defend himself, he was placed in reasonable apprehension of imminent harmful or offensive physical contact. An assault did occur.

268. When DEFENDANT PATROLMAN CARR'S fist did subsequently make harmful or offensive physical contact with PLAINTIFF CLINTON SIMMONS' face, as he intended it to, a battery did occur.

269. No law enforcement officer, in the act of arresting a criminal or suspected criminal, should use his fist to punch the arrestee suspect in the face, nor any other unreasonable and unnecessary force; therefore, DEFENDANT PATROLMAN CARR is liable for such conduct. Additionally, DEFENDANTS CITY OF HURRICANE, MAYOR SCOTT EDWARDS, AND CHIEF MICHAEL MULLINS are liable for this conduct, pursuant to the *Monell* Doctrine and the doctrine of supervisory liability.

270. PLAINTIFF CLINTON SIMMONS was completely subdued at the time he was struck by DEFENDANT PATROLMAN CARR. DEFENDANT SERGEANT WHITE already had the situation

under control, with her knees in PLAINTIFF'S back, such that he was unable to achieve much movement, and she was already in the act of placing him in handcuffs to restrain his wrists.

271. Having proven that the facts support the torts of assault and battery, the PLAINTIFF hereby does seek compensatory, pecuniary, punitive or exemplary (excluding CITY OF HURRICANE), and/or treble damages in a reasonable amount to be determined at the time of trial, and/or any other such relief that this Court may deem to be just and proper.

272. PLAINTIFF also requests that any costs he may incur for this cause of action be paid by the DEFENDANTS.

## THIRTEENTH CAUSE OF ACTION

**CONVERSION, Pursuant to West Virginia Tort Law and the Restatement of Torts (2d) §§ 222(a), 223, and 228;** Brought by ALL PLAINTIFFS against ALL DEFENDANTS, in their individual capacities, **EXCLUDING DEFENDANT DENISON**

273. The factual allegations in paragraphs one through forty-five in this complaint are hereby reasserted and incorporated by reference as though fully set forth herein.

274. This court has supplemental jurisdiction over this claim, as outlined in paragraph two-hundred eighteen in this complaint.

275. Four elements must be established to prove the tort of conversion:

    i. The Plaintiff owns or has the right to possess the personal property in question at the time of the interference;
    ii. The Defendant intentionally interfered with the Plaintiff's personal property (sometimes also described as exercising "dominion and control" over it);
    iii. The interference deprived the Plaintiff of the possession or use of the personal property in question; **and**
    iv. That interference caused damages to the Plaintiff.

276. On October 24, 2024, **DEFENDANTS with the HURRICANE POLICE DEPT.,** including **DEFENDANTS CORPORAL B. JOHNSON, PATROLMAN PAYTON CARR, PATROLMAN W.D. ALLEN, SERGEANT MAKENZIE WHITE, DETECTIVE JONATHON PAYNE,**

**OFFICER JOHN DOES 1-10, INCLUSIVE,** and **CHIEF MICHAEL MULLINS, CHIEF OF POLICE** executed an invalid and facially defective search warrant on the PLAINTIFFS' residence. The warrant did not state with specificity what items were to be seized or where they were to be seized from, referring only to attachments which were not included in the copy provided to the homeowner.

277.  Officers with the HURRICANE POLICE DEPT., an administrative arm of the DEFENDANT CITY OF HURRICANE, whose identities are, at the present, unknown to the PLAINTIFFS, namely, DEFENDANT OFFICER JOHN DOES 1-10, INCLUSIVE, wrongfully seized and retained PLAINTIFF BILLY LEE CORAM'S personal property, namely: one set of full-spectrum LED grow lights from the basement, one heated germination pad from the basement, one set of full-spectrum LED grow lights from the upstairs apartment, worth approximately $250 at the time they were permanently removed from him, and one (1) immature marijuana plant in soil, gender unknown, about six (6) inches tall and without flower, which was being kept immature and transformed into a bonsai plant as PLAINTIFF BILLY LEE CORAM is an avid arborist and bonsai artist, growing both for pleasure and for profit, without legal authority or justification.

278.  Officers with the HURRICANE POLICE DEPT., an administrative arm of the CITY OF HURRICANE, whose identities are, at the present, unknown to the PLAINTIFFS, namely DEFENDANT OFFICER JOHN DOES 1-10, INCLUSIVE, in the act of executing a search warrant on the PLAINTIFFS' residence on October 24, 2024, swat-style, did wrongfully and intentionally break four windows along the base of the home which are located on the inside of the basement of the residence, without legal authority or justification, allowing the cold winter air into the home, which is owned by PLAINTIFFS CLINTON AND TEARRIA SIMMONS, and which requires immediate repair

for the safety and wellbeing of the children residents, at a cost of approximately $2,500.00 ($624.00 each).

279.  DEFENDANT PATROLMAN CARR did wrongfully, intentionally, and maliciously, take PLAINTIFF TEARRIA SIMMONS' cellular device, an Apple iPhone 11 Pro Max, 256 gigabyte storage capacity, being of approximately $450.00 fair market value on the date it was destroyed, and smashed it onto the dining room table of her residence using the heel of his hand, subsequently shattering the screen in its entirety and rendering the device useless.

280. DEFENDANTS' actions are the equivalent of intentional interference and that interference deprived PLAINTIFFS of their personal property, causing pecuniary or economic monetary losses and emotional distress. Additionally, DEFENDANTS CITY OF HURRICANE, MAYOR SCOTT EDWARDS, AND CHIEF MICHAEL MULLINS are also liable for this conduct, pursuant to the *Monell* Doctrine and the doctrine of supervisory liability.

281. Having proven the elements of a claim for conversion, PLAINTIFFS hereby seek compensatory damages for the value of the converted property and/or fair labor market costs to replace necessary property and/or injunctive relief in the form of an order compelling the HURRICANE POLICE DEPT. to return the two sets of full-spectrum LED grow lights and germination pad that were illegally seized from the home and which belong to PLAINTIFF BILLY LEE CORAM, and/or any other such relief that this Court may deem just and proper.

282.  PLAINTIFFS also request that any costs they may incur for this cause of action be paid by the DEFENDANTS.

## FOURTEENTH AND FIFTEENTH CAUSES OF ACTION
**TRESPASS AND TRESPASS TO CHATTELS: Pursuant to West Virginia Tort Law and the Restatement of Torts (2d) §§ 158, 161, 217 and 218; Brought by ALL PLAINTIFFS against ALL DEFENDANTS, in their individual capacities**

---

68

283. The factual allegations in one through forty-five in this complaint are hereby reasserted and incorporated by reference as though fully set forth herein.

284. This court has supplemental jurisdiction over this claim, as outlined in paragraph two-hundred eighteen in this complaint.

285. To be successful in a claim for trespass to real property, the following elements must be demonstrated:

      i. Defendants entered Plaintiffs' property without valid legal authority or consent; and

     ii. Defendants' actions interfered with Plaintiffs' right to quiet enjoyment of their property and caused emotional distress.

286. In order to be successful in a claim for trespass to chattels, the following elements, similarly, must be proven:

     a. Defendants intentionally interfered with Plaintiffs' personal property (i.e., cellular device, windows, germination pad, two full-spectrum LED grow lights).

     b. Defendants' actions caused damage, deprivation of use, and financial losses.

287. Here, we know that each and every one of the DEFENDANTS, at various times relevant to this complaint, did enter onto the PLAINTIFFS' private real property without their consent, some on numerous occasions, and we know that the search warrant they used as their legal authority to do so on one such occasion was invalid and defective on its face, quashing any argument that they were acting within their legal authority on that date. We additionally know that the DEFENDANTS refused to recognize PLAINTIFF BILLY CORAM as having a right to privacy and never obtained his consent to enter or search his private spaces nor did they obtain a search warrant for his residence and searched it anyway.

288. We also know that the DEFENDANTS' actions by entering onto the property did cause PLAINTIFFS substantial emotional distress and interfered with their Constitutional Rights and their ability to use or possess such property, diminishing their quiet use and enjoyment of the property, and resulting in financial losses for costs repairing or replacing such property.

289. Here we know that the DEFENDANTS' acts, wrongfully and illegally seizing PLAINTIFFS' property, breaking and destroying PLAINTIFFS' property, and/or otherwise interfering with the quiet use and enjoyment of their property, did occur without legal justification or authority and did result in significant damages for the PLAINTIFFS, including financial losses and substantial emotional distress. DEFENDANTS CITY OF HURRICANE, MAYOR SCOTT EDWARDS, AND CHIEF MICHAEL MULLINS are additionally liable for this conduct, pursuant to the *Monell* doctrine and the doctrine of supervisory liability.

290. Having proven the elements of trespass and trespass to chattels under state law, the PLAINTIFFS now seek compensatory, pecuniary, exemplary or punitive (excluding CITY OF HURRICANE), and/or treble damages of a reasonable amount to be determined at the time of trial, and/or any other such other relief as this Court may deem to be just and proper.

291. PLAINTIFFS also request that any costs they may incur as a result of this cause of action be paid by the DEFENDANTS.

### SIXTEENTH CAUSE OF ACTION

**PROFESSIONAL NEGLIGENCE, Pursuant to West Virginia Tort Law and the Restatement of Torts (2d) §§ 282, 283, AND 299(a); Brought by ALL PLAINTIFFS against ALL DEFENDANTS, in their individual capacities**

292. The factual allegations in paragraphs one through forty-five in this complaint are hereby reasserted and incorporated by reference as though fully set forth herein.

293. This court has supplemental jurisdiction over this claim, as outlined in paragraph two-hundred eighteen in this complaint.

294. To be successful in a claim for negligence the PLAINTIFFS must demonstrate the following elements:

    i. That the Defendants owed the Plaintiffs **a duty of care** to conduct their duties, including conducting search warrants, arrests, and investigations, in a professional manner, in accordance with the proscribed industry standards for law enforcement and social services. The standard of care is heightened where the individual is in a professional position requiring specialized training and skill, such as a police officer or child protective services worker;

    ii. Defendants **breached this duty** through an act that they knew, or should have reasonably known, could or would cause the Plaintiffs harm;

    iii. Defendants' actions were the **actual** and **proximate** cause of the damages incurred by the Plaintiffs; and

    iv. That the Plaintiffs did sustain **actual damages** as a result of the Defendants' negligence.

295. As state law actors, each of the **DEFENDANTS** herein owed a professional duty of care to the PLAINTIFFS, while acting in the capacity of their jobs as agents, employees, or officers of the HURRICANE POLICE DEPT., administrative arm of the CITY OF HURRICANE, and CHILD PROTECTIVE SERVICES, Office of Child and Adult Services, Bureau for Social Services, Department of Health and Human Resources.

296. OFFICER DEFENDANTS owed PLAINTIFFS a duty of care, that they would adhere to the established policies and procedures for police officer conduct and would strive to respect the Constitutional Rights of each individual they come into contact within the community, and to protect innocence and fight injustice.

297. The OFFICER DEFENDANTS each breached that duty of care, as can be demonstrated by the following factual allegations:

71

a. Supervisory DEFENDANTS SCOTT EDWARDS, MAYOR, CITY OF HURRICANE and DEFENDANT CHIEF MICHAEL MULLINS, HURRICANE POLICE DEPT., did breach the duty of care owed to the PLAINTIFFS by failing to properly train and supervise their subordinates and by failing to establish proper and adequate training procedures, policies, practices, customs, and traditions to ensure that all employees, officers, and agents of the CITY OF HURRICANE and HURRICANE POLICE DEPT. know how to protect the civil rights of those individuals they are entrusted to serve;

b. OFFICER DEFENDANTS with the HURRICANE POLICE DEPT. did breach the duty of care owed to the PLAINTIFFS by failing to verify and ascertain the validity and scope of the search warrant *prior* to executing the search;

c. OFFICER DEFENDANTS with the HURRICANE POLICE DEPT. did breach the duty of care owed to the PLAINTIFFS by failing to knock and announce their presence *before* entering the PLAINTIFFS' residence, putting the safety of each and every PLAINTIFF at risk;

d. OFFICER DEFENDANTS with the HURRICANE POLICE DEPT. did breach the duty of care owed to the PLAINTIFFS by coercing or attempting to coerce the PLAINTIFFS into providing consent to enter and search their residence by means of intimidation and threats;

e. OFFICER DEFENDANTS with the HURRICANE POLICE DEPT. did breach the duty of care owed to the PLAINTIFFS by executing an overly broad search that violated the PLAINTIFFS' Constitutional Rights;

f. OFFICER DEFENDANTS with the HURRICANE POLICE DEPT. did breach the duty of care owed to the PLAINTIFFS by obtaining a search warrant on the PLAINTIFF TEARRIA SIMMONS by means of judicial deception; and

g. OFFICER DEFENDANTS with the HURRICANE POLICE DEPT. did breach the duty of care owed to the PLAINTIFFS by deploying over three quarters of the sworn officers employed by the HURRICANE POLICE DEPT. to the PLAINTIFFS' residence on October 22 and October 24, 2024, leaving the city largely unpatrolled for hours on end and putting the citizens of the CITY OF HURRICANE at risk of danger or harm in the event a real criminal act took place elsewhere.

298. DEFENDANT DENISON owed PLAINTIFFS a duty of care, to conduct her child welfare investigation in compliance with established procedures, policies, and state and federal law.

299. DEFENDANT DENISON did breach this duty of care, as established by the following factual allegations:

1. Making baseless threats to remove PLAINTIFFS' children without conducting a fair and complete investigation into the allegations made against the family;
2. Failing to inform the family of the allegations upon initial contact and, in fact, not until five days after initial contact;
3. Coercing consent to search PLAINTIFFS' home under duress;
4. Failing to provide the family with educational materials upon initial contact, as required by the *Child Protective Services Policy Handbook* (2022);
5. Failing to allow the family to confer with their attorney prior to continuing the interview, as is required by the Gibson Decree and the *Child Protective Services Policy Handbook* (2022);
6. Violating the PLAINTIFFS' procedural due process rights and right to a reasonable expectation of privacy by conspiring with officers or agents of the HURRICANE POLICE DEPT., to arrest PLAINTIFFS CLINTON AND TEARRIA SIMMONS simultaneously, under the belief that they would be leaving the minor children without a proper caretaker, then allowing DEFENDANT DENISON to remove the minor children from their home, without having substantiated any of the allegations of abuse or neglect made against them;
7. Failing to respect PLAINTIFFS' Constitutional Rights as a whole, intentionally or negligently and with reckless disregard, by engaging in conduct which inflicted severe emotional distress upon the PLAINTIFFS; and
8. Otherwise behaving inappropriately and unprofessionally, going beyond the bounds of the scope of her duties of employment as a CPS worker, and failing to comply with the policies and procedures set forth in the handbook that governs her job, nor with state and federal law.

300.  The DEFENDANTS' negligence was the actual and proximate cause of the PLAINTIFFS' damages.

301.  Actual cause, or cause-in-fact, is the standard that determines whether a Defendant's conduct was a factual link in causing the Plaintiff's harms.

302.  Actual cause is often established using the ***but for*** test. Under this test, "the Plaintiff's harm would not have occurred ***but for*** the Defendant's conduct."

303.  In this case, the PLAINTIFFS would not have had their Constitutional rights deprived of them, resulting in actual damages, ***but for*** the conduct of MAYOR EDWARDS, CITY OF HURRICANE,

*SIMMONS & CORAM v. CITY OF HURRICANE, ET AL.* **(2025)**
**COMPLAINT FOR DAMAGES, PURSUANT TO 42 U.S.C. §1983,**
**AND STATE CLAIMS PURSUANT TO 28 U.S.C. §1367; DEMAND FOR A JURY TRIAL**

CHIEF MULLINS, HURRICANE POLICE DEPT., CORPORAL JOHNSON, PATROLMAN ALLEN, PATROLMAN CARR, SERGEANT WHITE, DETECTIVE PAYNE, OFFICER JOHN DOES 1-10, INCLUSIVE, and ALYSON DENISON.

304.  Proximate cause, or legal cause, is the standard that determines whether it is fair and reasonable to hold a Defendant liable for the harm sustained by the Plaintiff.

305.  Proximate cause is most often tested using the reasonable foreseeability test. This test asks whether a reasonably prudent person in the same or similar situation as the Defendant would have been able to foresee the type of harm that occurred. In professional negligence, this standard becomes that of a reasonably prudent professional with the same specialized skills and/or training.

306.  In this case, a reasonably prudent Mayor in the same or similar position as DEFENDANT MAYOR SCOTT EDWARDS would have been able to foresee that a failure to establish adequate training practices and to properly supervise and train his subordinates accordingly would result in citizens of THE CITY OF HURRICANE being deprived of their civil rights.

307.  A reasonably prudent Chief of Police in the same or similar position as DEFENDANT CHIEF MICHAEL MULLINS would have been able to foresee that a failure to establish adequate training practices and to supervise and train his subordinates accordingly would result in citizens of the CITY OF HURRICANE being deprived of their civil rights.

308.  A reasonably prudent law enforcement officer in the same or similar position as DEFENDANTS CORPORAL JOHNSON, PATROLMAN CARR, PATROLMAN ALLEN, SERGEANT WHITE, DETECTIVE PAYNE, or OFFICER JOHN DOES 1-10, INCLUSIVE would have been able to foresee that the failure to provide truthful and complete information on an affidavit supporting an application for a search warrant, the failure to read and review a search warrant to

determine its scope and validity, the failure to only search the places or seize the items which are stated on that warrant, the failure to knock and announce their presence when executing a search warrant, and the acts of breaking personal property or engaging in similar such conduct would result in the deprivation of the civil rights of the citizens of the CITY OF HURRICANE.

309.  A reasonably prudent child protective services worker in the same or similar position as DEFENDANT ALYSON DENISON would reasonably foresee that the failure to adhere to the policy handbook or other departmental procedures, the failure to inform families of their rights, the failure to provide a family with educational material, the failure to allow a family an opportunity to speak with their attorney, the failure to respect the rights of the families they investigate, the failure to inform those families of the allegations made against them, and the acts of coercing a parent who has been placed under substantial duress into waiving their Constitutional Rights so that their home may be searched, threatening parents to remove children from their home when there is no substantiated evidence of abuse or neglect, and/or collaborating with law enforcement officers to have parents arrested so that they may subsequently remove children into the custody of the State would result in the deprivation of the civil rights of the families they are employed to support and the children they are entrusted to protect.

310.  These DEFENDANTS are the proximate or legal cause of the PLAINTIFFS' actual damages. DEFENDANTS CITY OF HURRICANE, MAYOR SCOTT EDWARDS, AND CHIEF MICHAEL MULLINS are liable for this negligent conduct pursuant to the *Monell* doctrine and the doctrine of supervisory liability.

311.  And finally, the PLAINTIFFS did sustain actual damages as a direct result of the DEFENDANTS' negligence, in the form of converted/destroyed/seized property items, monetary losses, severe emotional distress and physical symptomatology as a result of that distress, deprivations

of their Constitutional Rights, loss of privacy, public humiliation, harm to their familial integrity, and more.

312. Accordingly, having established the elements of professional negligence against each and every DEFENDANT, the PLAINTIFFS now seek compensatory, pecuniary, punitive or exemplary (excluding from CITY OF HURRICANE), and/or treble damages of a reasonable amount to be determined at the time of trial, and/or any such other relief as this Court may deem to be just and proper.

313. PLAINTIFFS also request that any costs they may incur as a result of this cause of action be paid by the DEFENDANTS.

## PRAYER FOR RELIEF

WHEREFORE, the PLAINTIFFS pray for a judgment in their favor and against the DEFENDANTS and humbly request that the Court grant the following relief:

1. Injunctive relief in the form of an ORDER requiring the CITY OF HURRICANE and/or HURRICANE POLICE DEPT. to return PLAINTIFF BILLY LEE CORAM'S personal property consisting of two sets of full-spectrum L.E.D. grow lights and one germination heating pad, that were seized from his residence during a search conducted by the DEFENDANTS on October 24, 2024, where the warrant was invalid, rendering the search and seizure Unconstitutional pursuant to the Fourth Amendment of the United States Constitution.

2. An award for DAMAGES, including compensatory, exemplary or punitive (excluding DEFENDANT CITY OF HURRICANE, *Monell* liability against a municipality, as punitive or exemplary damages are not recoverable against municipalities), pecuniary, and/or treble, in a reasonable amount to be determined at the time of trial, as allowable by Federal Law.

3. An award for compensation of the COSTS of filing and maintaining this suit, including reasonable fees for expert witnesses or attorney fees, as necessary and as allowable by Federal Law.

4.  Any other such equitable relief that this Court may deem to be just and proper, including declaratory relief where necessary and if appropriate to clarify the rights of the parties.

### JURY TRIAL DEMANDED

PLAINTIFFS HEREBY DEMAND A TRIAL BY A JURY, consisting of their peers, as is their right, for each triable issue and cause of action, numbered one through sixteen, within this Complaint for Damages.

**EXECUTED:** FEBRUARY 5, 2025                    Respectfully Submitted,

CLINTON SIMMONS, PLAINTIFF, *pro se*      & TEARRIA SIMMONS, PLAINTIFF, *pro se,* &
18 Hurricane Creek Rd. Hurricane WV 25526    PLAINTIFFS A.B.P, O.S.S., R.T.S., minor children
(304)539-4589; 681-777-3536;                 18 Hurricane Creek Rd. Hurricane, WV 25526
csimmons4pbcc@gmail.com                      (304)539-8262; (423)395-3550; tialashes@icloud.com

BILLY LEE CORAM, PLAINTIFF, *pro se*
18 Hurricane Creek Rd. Apt. B
Hurricane, WV, 25526
(304)563-5784; coramrobert64@gmail.com

77