**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

TEARRIA and CLINTON SIMMONS,
Individuals, their children, A.B.P., O.S.S.,
and R.T.S., by and through their mother, and
BILLY LEE CORAM, an individual, pro se,

               Plaintiffs,

v.                                        CIVIL ACTION NO. 3:25-0345

CITY OF HURRICANE, a municipality,
SCOTT EDWARDS, Mayor of the City of Hurricane,
in his individual capacity, CHIEF MICHAEL MULLINS,
Chief of Hurricane Police Department, in his individual
capacity, CORPORAL BRETT JOHNSON, PATROLMAN,
W.D. ALLEN, PATROLMAN PAYTON CARR, SERGEANT
MAKENZIE WHITE, DETECTIVE JONATHAN PAYNE, and
OFFICER JOHN DOES 1-10, inclusive, in their individual capacities,
and ALYSON DENISON, a worker for Child Protective Services,
in her individual capacity,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

This action was referred to the Honorable Joseph Reeder, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge has submitted findings of fact and recommended that the Court grant, in part, and deny, in part, Defendants' Motions for Judgment on the Pleadings and Motion to Dismiss. *Proposed Findings and Recommendations* 2, ECF No. 92 ("PF&R").

Specifically, Magistrate Judge Reeder recommends that the Court (1) dismiss official capacity claims; (2) dismiss without prejudice the claim against the City of Hurricane; (3) dismiss

Defendants Mayor Scott Edwards and Chief Michael Mullins from the action; (4) dismiss Plaintiffs' Fourteenth Amendment claims against Defendant Alyson Denison; and (5) allow to proceed Plaintiffs' individual-capacity Fourth Amendment claims for unlawful entry and unlawful detention against Defendants Corporal Brett Johnson, Patrolman W.D. Allen, Patrolman Payton Carr, Sargeant Makenzie White, Detective Jonathan Payne, and Alyson Denison, along with associated state-law claims. *PF&R* 2.

Multiple parties have filed objections[1] to the Proposed Findings and Recommendations. The Court, having reviewed the pleadings[2] and objections de novo, **ADOPTS in part** and **DECLINES TO ADOPT in part** the Magistrate Judge's Findings and Recommendations.

## I.    BACKGROUND

This case, commenced under 42 U.S.C. § 1983, alleges that Defendants violated Plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendments, and violated multiple state laws. *Compl.* 2, ECF No. 4. Plaintiffs include Billy Lee Coram and married couple Clinton Simmons and Tearria Simmons. *Id.* Tearria Simmons brings suit on behalf of herself and her minor children, A.B.P., O.S.S., and R.T.S. *Id.* ¶ 6.

The underlying conduct includes alleged interactions involving the Hurricane Police Department officers and Child Protective Services (CPS) worker Alyson Denison at the residence

---

[1] Defendant Alyson Denison's Objections to PF&R, ECF No. 93 ("Def. Denison's Objs."); Pls.' Objections to the Magistrate Judge's PF&R, ECF No. 94 ("Pls.' Objs."); Defs. City of Hurricane, Scott Edwards, Michael Mullins, Brett Johnson, W.D. Allen, Payton Carr, Makenzie White, and Jonathon Payne's Objections to PF&R, ECF No. 95 ("Defs.' Objs.").

[2] Defs.' Mots. for J. on the Pleadings and Mems. of L.*,* ECF Nos. 35–50; Pls.' Resp. to Def.'s Mot. for J. on the Pleadings, ECF Nos. 51, 53, 58, 59; Defs.' Replies to Pls.' Resp. to Def.'s Mot. for J. on the Pleadings, ECF Nos. 56, 57, 61, 62; Def. Denison's Mot. to Dismiss, ECF No. 87; Def. Denison's Mem of L. in Supp. of Mot. to Dismiss, ECF No. 88 ("Def. Denison's Mem.*"*); Pls.' Resp. in Opp. to Def. Alyson Denison's Mot. to Dismiss, ECF No. 89 ("Pls.' Denison Resp."); Def. Denison's Reply to Pls.' Resp. in Opp. to Def. Alyson Denison's Mot. to Dismiss, ECF No. 90.

of the Simmons' and the separate upstairs apartment occupied by Billy Lee Coram. *Id.* at 2, 8–11. The Complaint alleges that, on September 18, 2024, Defendant Patrolman W.D. Allen "threatened Plaintiff Tearria Simmons with charges of aiding and abetting and removal of her children if she did not allow a warrantless search of her home to look for her husband and intimidated the family[.]" *Id.* ¶ 29. Her husband, Plaintiff Clinton Simmons, purportedly had an outstanding warrant for his arrest for failure to appear on a misdemeanor charge in Putnam County. *Id.* ¶ 27. The Complaint also alleges that, on October 21, 2024, Defendant Denison responded to the Simmons' residence after an anonymous referral alleging abuse or neglect. *Id.* ¶ 30. Defendant Denison allegedly became hostile when Plaintiff Tearria Simmons denied her entry to the residence. *Id.* According to the Complaint, on the next day, Defendant Patrolman Payton Carr presented and executed a warrant at the Simmons' residence for unrelated conduct. *Id.* ¶ 31. Defendant Denison allegedly arrived at the scene and ultimately received coerced consent for a walkthrough, on the condition that Plaintiff Tearria Simmons would accompany the officers. *Id.* The Complaint alleges that, after the walkthrough, Plaintiff Tearria Simmons was further coerced to provide written consent to Defendant Carr for a search of her residence for the purpose of finding her husband. *Id.* ¶ 32. Further, despite Plaintiff Tearria Simmons's protest, a search for Plaintiff Clinton Simmons was then carried out by Defendant Carr and the Hurricane Police Department in Plaintiff Tearria Simmons's absence. *Id.* ¶ 33. Additionally, the Complaint alleges that, during the search, Defendant Patrolman Carr failed to prevent or authorized Defendant Denison's entry of the Simmons' residence and contact with the Simmons children without their guardians present. *Id.* ¶ 34.

The Complaint next alleges that, on October 24, 2024, a SWAT team entered the Simmons' residence, without following proper procedure, executing an invalid search warrant directed at

Plaintiff Tearria Simmons which was dated the same day as the prior "consented" search of her residence. *Id.* ¶¶ 36–38. The Complaint states that, during this subsequent search, Plaintiff Clinton Simmons was arrested in Plaintiff Billy Lee Coram's separate upstairs apartment which was marked with a sign reading: "No Trespassing, Private Property." *Id.* ¶ 39. The Complaint also alleges that Defendant Carr punched Plaintiff Clinton Simmons's head multiple times during the arrest and that Defendants subjected the entire family to harassment; destroyed Plaintiff Tearria Simmons's phone; and unlawfully seized property belonging to Plaintiff Billy Lee Coram. *Id.* ¶¶ 40–42. Plaintiffs allege that the CPS referral case was closed, and no criminal charges were brought against them. *Id.* ¶¶ 41, 44.

Magistrate Judge Reeder made Proposed Findings and Recommendations addressing Defendants' Motions for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) and Defendant Denison's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    STANDARD OF REVIEW

District courts may "accept, reject, or modify, in whole or in part, the findings or recommendations" of a magistrate judge. 28 U.S.C. § 636(b)(1)(C). However, a court must conduct a de novo review of the portions of the Magistrate Judge's findings "to which objection is made." *Id*. Courts need not conduct a review of factual and legal conclusions to which a party does not object. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

When a plaintiff proceeds pro se, the reviewing court must liberally construe the pro se litigant's complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). While a court is not "expected to construct full blown claims from sentence fragments," *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), a court should not

"permit technical pleading requirements to defeat the vindication of any constitutional rights which the plaintiff alleges, however inartfully, to have been infringed." *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978) (citation omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accepting the factual allegations in the complaint as true, the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (citations omitted). While factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(c) motion for judgment on the pleadings, the same standard of review applies. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002); *Priority Auto Grp., Inc. v. Ford Motor Co.*, 757 F.3d 137, 139 (4th Cir. 2014).

### III.    ANALYSIS

Defendant Denison raises two specific objections to the Proposed Findings and Recommendations. She does not object to the recommendation that the Fourteenth Amendment claims against her are dismissed, however, she objects to the survival of the Fourth Amendment claims against her and the related state law claims. *Def. Denison's Objs*. 2.

Plaintiffs raise two specific objections to the Proposed Findings and Recommendations. They do not object to the recommended dismissal of official capacity claims or the Fourteenth Amendment claim against Defendant Denison. *Pls.' Objs*. 2. They also do not object to the recommendation that the individual-capacity Fourth Amendment claims for unlawful entry and unlawful detention and associated state law claims proceed. *Id.*

Defendants City of Hurricane, Scott Edwards, Michael Mullins, Brett Johnson, W.D. Allen, Payton Carr, Makenzie White, and Jonathon Payne raise three specific objections to the Proposed Findings and Recommendations. They do not object to the recommendation for the dismissal of Plaintiffs' claims against the City of Hurricane, Defendant Mullins, Defendant Edwards, and official capacity claims against the officers. *Defs.' Objs*. 2.

The Court proceeds with a de novo review of the specific objections raised by each party in the order in which they were filed.

### A. Defendant Alyson Denison's Objections

#### i. Fourth Amendment Claim

Defendant Denison argues that the Proposed Findings and Recommendations fail to appropriately analyze her qualified immunity from the Fourth Amendment claim against her which entitles her to protection at the earliest stage of litigation. *Def. Denison's Objs*. 2–3 (citing *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987)). The Proposed Findings and Recommendations state that factual questions remain as to Defendant Denison's role in the alleged conduct at the Simmons' residence which give rise to violations of Fourth Amendment rights, ultimately determining that a qualified immunity determination would be premature. *PF&R* 12.

Liability is imposed under 42 U.S.C. § 1983 when a person acting under color of state law deprives an individual of "rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. Qualified immunity shields government officials, including CPS workers, from liability from civil damages, protecting "all but the plainly incompetent or those who knowingly violate the law." *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) (citation omitted); *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Parker v. Henry & William Evans Home for Children, Inc.*, 762 Fed.Appx. 147, 154 (4th Cir. 2019). It provides officials "breathing room to make

reasonable but mistaken judgments." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation omitted). An official is entitled to qualified immunity unless (1) they violated a federal statutory or constitutional right and (2) that right was clearly established at the time of its violation. *See Owens v. Baltimore City State's Att'y's Off.*, 767 F.3d 379, 395 (4th Cir. 2014) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

First, the Fourth Amendment prohibits unreasonable search and seizures. U.S. Const. amend. IV. A search conducted without a warrant, absent an applicable exception like voluntary consent, is presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586–87 (1980); *Quinn v. Zerkle*, 111 F.4th 281, 291 (4th Cir. 2024). "Where there is coercion there cannot be consent." *Bumper v. North Carolina*, 391 U.S. 543, 550 (1968). The Complaint contains allegations that a day after Plaintiff Tearria Simmons refused Defendant Denison's entry into the residence and requested to speak to an attorney prior to an interview, Defendant Denison, along with police officers, engaged in malicious and coercive tactics to unlawfully search the Simmons' residence. *Compl.* ¶¶ 111, 117–128, 145. If proven, this conduct may establish a Fourth Amendment claim.

In approaching the second question of whether a constitutional right is clearly established, the Court must define the right within the specific context of the case, as the Supreme Court has "repeatedly told courts … not to define clearly established law at a high level of generality." *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019) (citation omitted); *Thorpe v. Clarke*, 37 F.4th 926, 940 (4th Cir. 2022) ("[T]he Court has regularly insisted on highly particularized law in the Fourth Amendment context[.]"). The Supreme Court has clarified that while "caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (citation omitted); *Ashcroft*, 563 U.S. at 741. A right is clearly established when any

reasonable individual in Defendant Denison's circumstances would have understood that they were violating a right. *Ashcroft*, 563 U.S. at 741. The Complaint alleges that Defendant Denison knowingly and intentionally obtained coerced consent for the search of the Simmons' residence by threatening to remove the Simmons children if consent to search was not provided. *Compl.* ¶¶ 119–120. Defendant Denison accurately states that qualified immunity should be resolved at the earliest possible stage of litigation. *Def. Denison's Objs*. 3; *Pearson*, 555 U.S. at 232 (citation omitted). However, the Court agrees with the Magistrate Judge's determination that there are questions of fact surrounding Defendant Denison's conduct that preclude the Court from evaluating qualified immunity at this stage. *PF&R* 21. Defendant Denison argues that Plaintiffs' rights are not clearly established because there is no precedent establishing the Fourth Amendment rights of individuals subject to a CPS worker's investigation. *Def. Denison's Objs*. 3–4 (citing *Rogers v. Cumberland Cnty. Dep't of Soc. Servs.,* No. 5:20-CV-477-BO, 2022 WL 1132153, at *12 (E.D.N.C. Feb. 1, 2022); *Wildauer v. Frederick Cnty.*, 993 F.2d 369, 372 (4th Cir. 1993); *Ross v. Klesius*, 715 Fed.Appx. 224, 226 (4th Cir. 2017)). Here, the Complaint addresses Defendant Denison's actions in concert with the police officers in conducting a search of the residence; it does not assert constitutional violations arising solely in the context of a CPS investigation. Thus, the Court does not make a ruling as to qualified immunity at this stage. As Magistrate Judge Reeder stated, Defendant Denison can reassert qualified immunity at the summary judgment stage. *PF&R* 21.

Accordingly, the Court overrules Defendant Denison's objection to the qualified immunity analysis of the Fourth Amendment claim against her.

### ii. State Law Claims

Defendant Denison argues that the Proposed Findings and Recommendations failed to address the sufficiency of the pleadings of the state law claims. *Def. Denison's Objs*. 6. The Magistrate Judge recommended that the Court assume supplemental jurisdiction over the state law claims and refrained from addressing the sufficiency of the pleadings, reasoning that such an evaluation would be premature. *See PF&R* 23. The Court will address whether Plaintiffs have sufficiently pled claims against Defendant Denison of Count IX (intentional infliction of emotional distress); Count XIV and XV (trespass and trespass to chattels); and Count XIV (professional negligence).

### 1. Intentional Infliction of Emotional Distress

The Supreme Court of Appeals of West Virginia first recognized a claim for intentional infliction of emotional distress (IIED), also known as the tort of outrage, in *Harless v. First National Bank*, 289 S.E.2d 692 (W. Va. 1982), when it said: "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Syl. Pt. 6, *Harless,* 289 S.E.2d 692.

A plaintiff must establish the following four elements to prevail on a claim for intentional infliction of emotional distress:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from [their] conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis v. Alcon Lab., Inc.*, 504 S.E.2d 419 (W. Va. 1998). Defendant Denison argues that Plaintiffs fail to plead specific intent, that the conduct was not extreme and outrageous, and that the claims asserted by Plaintiff Billy Lee Coram, Plaintiff Clinton Simmons, and the children through Plaintiff Tearria Simmons are not supported by facts. *Def. Denison's Mem.* 14–15. Plaintiff alleges that Defendant Denison engaged in extreme and outrageous conduct that she knew or reasonably should have known would cause extreme emotional distress to Plaintiffs. *Compl.* ¶¶ 237, 239. The alleged conduct includes, in part, threatening to take her children if consent to search was not provided and entering the home to contact the children without guardian consent. *Id.* ¶¶ 237, 239, 240. Additionally, Plaintiffs argue that the conduct is outrageous given the sensitive nature of familial relationships, naturally resulting in emotional distress. *Pls.' Denison Resp.* 19. While minimal, the Complaint asserts that Defendant Denison's conduct caused emotional distress. *Compl.* ¶ 240. The Court agrees that the Complaint fails to state a claim of IIED against Defendant Denison for conduct toward Plaintiff Billy Lee Coram. However, Plaintiff Clinton Simmons, Plaintiff Tearria Simmons, and the children through Plaintiff Tearria Simmons sufficiently plead that Defendant Denison engaged in conduct that may establish an IIED claim. Accordingly, the IIED claim against Defendant Denison survives.

### 2. Trespass and Trespass to Chattels

Under West Virginia common law, trespass is "an entry on another man's ground without lawful authority, and doing some damage, however inconsiderable, to his real property." *Whiteman v. Chesapeake Appalachia, L.L.C.*, 729 F.3d 381, 386 (W. Va. 2013) (citing *Hark v. Mountain Fork Lumber Co.*, 34 S.E.2d 348, 352 (W. Va. 1945)). Plaintiffs omit the element requiring damage from their definition. *Pls.' Denison Resp.* 19. The Court finds Plaintiffs have failed to allege that Defendant Denison caused damage to Plaintiffs' real property, particularly considering Defendant

Denison was not alleged to be present at the Simmons residence on the day that the alleged property damage occurred. *Compl*. 10–11. Plaintiffs fail to argue otherwise. Additionally, Plaintiffs do not address Defendant Denison's request to dismiss the trespass to chattels claim and do not sufficiently allege facts to support such a claim. Thus, the trespass to chattels and trespass claims asserted against Defendant Denison will be dismissed.

### 3.  Professional Negligence

To plead a claim of negligence, a plaintiff must allege that "the defendant owes him a duty, that there was a negligent breach of that duty, and that injuries received by the plaintiff resulted proximately from the breach of the duty." *Jones v. Logan Cnty. Bd. of Educ.*, 881 S.E.2d 374, 383 (W. Va. 2022); *Hayes v. Kanawha Valley Reg'l Transp. Auth.*, 902 S.E.2d 477, 482 (W. Va. 2024). Defendant Denison argues that Plaintiffs have failed to establish the element of duty and that immunity bars the claim. *Def. Denison's Mem*. 17. Plaintiffs allege Defendant Denison violated procedural duties owed to them, as established by the Child Protective Services Policy Handbook (2022). *Compl*. ¶¶ 298–309. Plaintiffs claim that no state law immunity applies because of the purported violation of a constitutional right. *Pls.' Denison Resp*. 19.

Defendant Denison relies on a Western District of Virginia case applying Virginia law to argue that "[i]t is well-settled that internal policies do not set a legal duty of care actionable in negligence as a matter of law." *Def. Denison Objs*. 9 (citing *Allen v. Walker*, No. 3:24-cv-00067, 2025 WL 1332969, at *12 (W.D. Va. May 7, 2025)). The same premise applies in West Virginia. *W. Va. Dep't of Hum. Serv. v. David B.*, 911 S.E.2d 884, 895 (W.Va. 2024). Plaintiffs broadly refer to the Child Protective Services Policy Handbook (2022) to assert that Defendant Denison failed to satisfy her duty of care. *Compl*. ¶¶ 298–99. Plaintiffs also broadly allege that Defendant Denison owed Plaintiffs a duty of care to "conduct her child welfare investigation in compliance

with established procedures, policies and state and federal law." *Compl.* ¶ 298. Reliance on the policy handbook, alone, and conclusory statements of a source of a duty would be insufficient. *David B.*, 911 S.E.2d at 893; *West Virginia Department of Human Services v. A.R.*, 900 S.E.2d 16, 26 (W. Va. 2024) (citation omitted). However, Plaintiffs' factual allegations include, in part, that Defendant Denison breached her duty of care by making baseless threats to remove the Simmons children; coercing consent to search; violations of Plaintiffs' procedural due process rights and reasonable expectation of privacy; failing to respect Plaintiffs' rights as a whole, "intentionally or negligently and with reckless disregard, by engaging in conduct which inflicted severe emotional distress"; and "behaving inappropriately and unprofessionally, going beyond the bounds of the scope of her duties of employment as a CPS worker, and failing to comply with the policies and procedures set forth in the handbook that governs her job, nor with state and federal law." *Compl.* ¶ 299. Thus, Plaintiffs have pled that Defendant Denison breached duties she owed Plaintiffs arising under the Constitution.

Defendant Denison next argues that she has complete immunity for discretionary acts under West Virginia law. *Def. Denison's Mem.* Qualified immunity shields government officials from liability when they perform discretionary activities in an official capacity so long as they "did not violate clearly established laws of which a reasonable official would have known." *Maston v. Wagner*, 781 S.E.2d 936, 947 (W. Va. 2015). Immunity does not apply when acts are "fraudulent, malicious, or otherwise oppressive." *Crouch v. Gillispie*, 809 S.E.2d 699, 704 (W. Va. 2018) (citation omitted); *David B.*, 911 S.E.2d at 893. Plaintiffs allege that Defendant Denison's conduct violated rights and expectations established by the Constitution by engaging in conduct also forming the basis for the Fourth Amendment claim against Defendant Denison. Considering the Fourth Amendment claim persists, and the Court is not able to determine the issue of immunity at

this stage because Defendant Denison may have established a violation of a clearly established right, this claim also survives.

### B. Plaintiffs' Objections

Plaintiffs claim the Proposed Findings and Recommendations erroneously recommend dismissal of supervisory liability claims and a *Monell* claim against the City of Hurricane, or alternatively, request leave to amend. *Pls.' Objs.* 2.

#### i. Section 1983 Claims of Supervisory Liability

Plaintiffs argue that the Proposed Findings and Recommendations erroneously concluded that the Complaint failed to state a claim in Count VI's supervisory liability claim against Defendant Mullin, Chief of Hurricane Police Department, and Defendant Edwards, Mayor of the City of Hurricane. *Pls.' Objs.* 3. The Magistrate Judge recommended that the Court dismiss the supervisory liability claims because the Complaint failed to establish that the individuals, through their own actions or by way of conduct from which such involvement could reasonably be inferred, violated the Constitution. *PF&R* 10.

To establish a § 1983 claim for supervisory liability, a plaintiff must plausibly allege:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
(2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and
(3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Wilkins v. Montgomery*, 751 F.3d 214, 226

(4th Cir. 2014). Liability under a failure to supervise theory requires a history of widespread abuse. *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983).

In evaluating Plaintiffs' claim against Defendant Edwards, the Court agrees with the Magistrate Judge's determination that Plaintiffs' reliance on Defendant Edwards' role as mayor, alone, is not sufficient to establish supervisory liability. *PF&R* 11. In the Complaint, Plaintiffs allege that Defendant Edwards is responsible for establishing training and implementation along with Defendant Mullins, and that, "after seventeen years of serving" as a mayor, "knows, or reasonably should know, which training practices, procedures, and customs are ineffective and inadequate" and place citizens at risk, "especially after a pattern of similar behavior is established, as is evidenced by other, similar causes of action filed within this Court, and this is not the first time allegations such as these have been asserted against the Department and City." *Compl.* ¶¶ 185, 188. However, Plaintiffs do not provide facts to support these conclusory assertions.

The Complaint does not contain allegations that establish that Defendant Edwards had actual or constructive knowledge of a subordinate's conduct creating an unreasonable risk of constitutional injury and a gravely inadequate response causing a constitutional injury to Plaintiffs. Plaintiffs argue that Defendant Edwards' failure to discipline officers after the conduct at-issue in this case establishes an authorization. *Pls.' Objs.* 5. However, for supervisory liability, the knowledge underlying a failure to supervise must be present prior to the alleged inaction resulting in a constitutional injury. *Danser v. Stansberry*, 772 F.3d 340, 349–50 (4th Cir. 2014) ("A supervisor may be held liable under a tacit authorization theory if that supervisor fails to take action in response to a known pattern of comparable conduct occurring before the incident at issue took place.").

Plaintiffs also argue that the pleading requirements allow for Plaintiffs to allege solely that

Defendant Edwards has a supervisory role and the conclusory statement that prior litigation involving similar conduct has occurred. *Pls.' Objs*. 4–5, 8 (citing *Owens*, 767 F.3d at 403). However, in *Owens*, a *Monell* claim was sufficiently pled when the plaintiff alleged the existence of reported and unreported cases and numerous successful motions. *Owens*, 767 F.3d at 403. The pleadings there demonstrated that the defendant police officers withheld information on multiple occasions, thus providing factual support for allegations of widespread and recurrent conduct. *Id.* Here, the pleadings are conclusory and insufficient to state a claim to relief that is plausible on its face and rather "offer[] 'labels and conclusions' or formulaically recite[] the elements of [their] § 1983 cause of action." *Id.* (citing *Iqbal*, 556 U.S. at 678).

In Plaintiffs' Objections, they argue that the attached complaints support their conclusory allegation that there have been prior claims of similar conduct. *Pls.' Objs*. 8–9. The attached documents include complaints that were filed in this Court in 2021 and 2022. *See Smith v. Oiler*, No. 3:21-cv-00649 (S.D. W. Va. 2021), Pls.' Ex. 3, ECF No. 94-3 ("Smith Compl."); *Young v. Mullins*, No. 3:22-cv-00596 (S.D. W. Va. 2022), Pls.' Ex. 4, ECF No. 94-4 ("Young Compl.").[3] The 2022 complaint involved a claim surrounding an alleged unjustified traffic stop policy established by Defendant Edwards. *Young Complaint* 3. Thus, it does not allege circumstance of a constitutional violation like this one that could establish a history of widespread and recurrent conduct. Additionally, there must be an affirmative causal link between the supervisor's alleged

---

[3] The Court excludes from consideration the attachments to Plaintiffs Objections, ECF Nos. 94-1, 94-2, 94-5, as such attachments are not subject to judicial notice, and otherwise would result in conversion of the motion. *See* Fed. R. Civ. P. 12(d). The third and fourth attachments, Smith Complaint and Young Complaint, are complaints that were filed in this Court, which are subject to judicial notice and are considered without converting the motion into a motion for summary judgment. *See* Fed. R. Evid. 201(c); *Goldfarb v. Mayor and City Council of Baltimore*, 791 F.3d 500, 506, 508–09 (4th Cir. 2015) (citation omitted); *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (4th Cir. 1986); *Armbruster Products, Inc. v. Wilson*, 35 F.3d 555, 1994 WL 489983, at *2 (4th Cir. 1994) (unpublished table decision).

conduct and the constitutional injury which is lacking. *Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 258 (4th Cir. 2022). Thus, the Court agrees that Plaintiffs have failed to establish a supervisory liability claim against Defendant Edwards and will deny Plaintiffs' objections to the dismissal of Count VI against Defendant Edwards.

Next, the Court evaluates the supervisory liability claim against Defendant Mullins. The Court disagrees with the Magistrate Judge's finding that the Complaint contains no allegations that Defendant Mullins participated in, directed, or was aware of the specific entry into the residence or detention of Plaintiffs. *PF&R* 11. As Plaintiffs argue, the Complaint alleges that Defendant Mullins was present at the scene of the search on October 24, 2024, and was supervising Plaintiff Clinton Simmons while also providing guidance and authorization to the officers as they carried out the search of the residence. *Pls.' Objs*. 6; *Compl*. ¶¶ 178–183. However, the Complaint is still devoid of factual allegations to demonstrate that Defendant Mullins was actually or constructively aware that subordinates posed a pervasive and unreasonable risk of constitutional injury on more than one occasion. As previously stated, Plaintiffs subsequently supplied the Court with a complaint in a 2021 case asserting a claim of excessive force against Defendant Mullins. *Smith Compl*. 1. The Complaint still fails to assert that widespread and recurrent conduct because the 2021 suit does not indicate that Defendant Mullins was aware of a pervasive and unreasonable risk of harm that the officers here may pose against the public. The pleadings also lack allegations that Defendant Mullins was aware of the alleged conduct that transpired within the residence, considering Defendant Mullins was outside of the residence, and there are not any factual allegations that he was aware of previous instances that would give rise to another violation to which he inadequately responded. Thus, Plaintiffs fail to establish that Defendant Mullins was acting with deliberate indifference. *See Shaw*, 13 F.3d at 799 (explaining that a supervisor cannot

be reasonably expected to establish rules for isolated incidents or to prevent deliberate unlawful acts of properly trained employees to which he cannot anticipate) (citations omitted). Thus, the claim against Defendant Mullins will also be dismissed, and Plaintiffs' objection will be overruled.

### ii.   Section 1983 Claim Against the City of Hurricane

Plaintiffs argue that the Proposed Findings and Recommendations erroneously concluded that the Complaint failed to plead a § 1983 claim against the City of Hurricane. *Pls.' Obj*s. 10. The Magistrate Judge recommended that the Court dismiss the claim because the Complaint failed to identify a custom or policy within its pleadings; "[i]nstead, the municipal liability claim is based solely upon the single set of events involving Plaintiffs." *PF&R* 8.

Political subdivisions are amenable to suit for constitutional violations under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1976). However, the fact that political subdivisions may be subject to liability for *Monell* claims does not render them vicariously liable for the actions of their employees. *Id.* at 691 ("In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."). Rather, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999). This is an easy burden at this stage. *See Owens*, 767 F.3d at 403 (explaining "[t]he recitation of facts need not be particularly detailed, and the chance of success need not be particularly high"). The Fourth Circuit Court of Appeals has specified that:

> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest [s] deliberate

-17-

indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citations omitted). Here, the Court agrees with the Proposed Findings and Recommendations' conclusion that the Complaint is devoid of allegations of a pattern of comparable conduct or circumstances to justify the inference of a policy being the moving force of the alleged constitutional violations. *PF&R* 8–9 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997); *Estate of Jones by Jones v. City of Martinsburg, West Virginia*, 961 F.3d 661, 671–72 (4th Cir. 2020)).

Plaintiffs rely on Defendant Edwards' role to argue his omissions or failure to train establish a policy. *Pls.' Objs*. 10. However, as previously stated, the Complaint lacks factual allegations to establish Defendant Edwards had knowledge of the allegedly violative conduct. Plaintiffs also fail to identify particular deficiencies within the training program. *Reese v. Hannah*, No. 2:23-cv-00805, 2024 WL 3607471, at *4 (S.D. W. Va. July 31, 2024) (citation omitted). Additionally, the Court is unpersuaded by the after-the-fact considerations that Plaintiffs put forth to support a policy based upon ratification of allegedly improper conduct. *Pls.' Objs.* 13. Plaintiffs also claim that a policy has been alleged through the single action of Defendant Edwards, a final policymaking official. *Id.* However the case relied upon by Plaintiffs, *Pembauer v. Cincinnati*, 475 U.S. 469 (1986), held that "municipal liability is limited to action for which the municipality is actually responsible" and "that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembauer*, 475 U.S. at 479–80, 483. Plaintiffs fail to allege facts establishing that

Defendant Edwards took action that could satisfy this requirement. Thus, the Court overrules

Plaintiffs' objection and will dismiss Plaintiffs' *Monell* claim.[4]

### C. Defendants City of Hurricane, Scott Edwards, Michael Mullins, Brett Johnson, W.D. Allen, Payton Carr, Makenzie White, and Jonathon Payne's Objections

#### i. Fourth Amendment Unlawful Entry and Unlawful Detention Claims

In addressing the Fourth Amendment claims asserted against them, Defendants solely

object to what they believe is a recharacterization in the Proposed Findings and Recommendations

as one of unlawful entry and unlawful detention. *Defs.' Objs*. 3. Defendants correctly state that the

only claim for "coerced entry/invalid consent" is raised against Defendant Denison. *Id.* at 3–4. As

Defendants acknowledge, courts liberally construe pro se plaintiff's pleadings. *Erickson*, 551 U.S.

at 94. The Court finds the facts of the Complaint adequately allege unlawful entry, as conducting

searches or seizures without a valid warrant or qualifying exception is unconstitutional, and thus,

unlawful. The pleadings provide sufficient notice to Defendants of the alleged claims they face, as

required by Federal Rule of Civil Procedure 8(a)(2). Thus, the Court overrules Defendants'

objections to the characterization of Defendants' alleged Fourth Amendment violations.

#### ii. Fifth and Fourteenth Amendment Claims

Defendants next argue that the Proposed Findings and Recommendations failed to evaluate

the Fifth and Fourteenth Amendment claims within the Complaint. *Defs.' Objs*. 4. Plaintiffs state

that their "Fifth-Amendment component of Count VII may be treated as merged within the

---

[4] Within Plaintiffs' Objections, they request leave to amend their pleadings of their *Monell* claim against the City of Hurricane and supervisory liability against Defendant Mullin and Defendant Edwards. *Pls.' Objs.* 16. The Court has found the Complaint inadequately pled such claims. The Court, too, has found the lawsuits that Plaintiffs have since supplied in support of their conclusory assertion are dissimilar in nature from this alleged conduct. Thus, amendment would be futile, as the proposed amendments stated within Plaintiffs' Objections would still fail to satisfy Federal Rule of Civil Procedure 12(b)(6). *Pls.' Objs.* 17; *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91, 113 (4th Cir. 2025) (citations omitted).

Fourteenth Amendment due-process claim." *Pls.' Consolidated Resp. to Def.'s Mot. for J. on the Pleadings* 24, ECF No. 51. Thus, the Court will dismiss the Fifth Amendment claim.

Plaintiffs argue that dismissal of the Fourteenth Amendment claims based on their overlap with the Fourth Amendment claims would be premature. *Pls.' Resp. to Def.'s Mot. for J. on the Pleadings* 27. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. There are both substantive and procedural components. "Procedural due process prevents mistaken or unjust deprivation, while substantive due process prohibits certain actions regardless of procedural fairness." *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 145 (4th Cir. 2014).

When a particular amendment provides a constitutional right, that provision guides the claim instead of a due process analysis. *Albright v. Oliver*, 510 U.S. 266, 273 (1994); *Smith v. Travelpiece*, 31 F.4th 878, 885 (4th Cir. 2022) ("Dressing a Fourth Amendment claim up in due process language does not transform it into a Fourteenth Amendment claim."). The Fourth Amendment prohibits unreasonable search and seizures. U.S. Const. amend. IV. The conduct alleged in the complaint is that of unreasonable search and seizure. Thus, the more-specific-provision rule designates the Fourth Amendment approach as controlling. Thus, Count VII will be dismissed.

### iii. State Law Claims

Defendants argue that the Proposed Findings and Recommendations failed to address the sufficiency of the pleadings of the state law claims. *Defs.' Objs*. 4. The Magistrate Judge recommended the Court assume supplemental jurisdiction over the state law claims without addressing the sufficiency of the pleadings. *See PF&R* 21–23. However, the Magistrate Judge

indicated that because Defendants' arguments for dismissal of the state law claims are derivative of their challenges to the federal claims and rely upon factual determinations, it was premature to determine their sufficiency. *Id.* at 23. The Court agrees in part. The Court will briefly address Plaintiffs' state law claims of IIED, assault and battery, conversion, trespass and trespass to chattels, and professional negligence against the corresponding Defendants, excluding Defendant Denison.[5]

Plaintiffs failed to counter any motions in regard to the state law claims, instead stating that the details have plausibly alleged facts stating plausible claims under the Fourth and Fourteenth Amendments and that any failure should be curable by amendment. *Pls.' Resp. to Def.'s Mot. for J. on the Pleadings* 27–28.

Briefly, the Court first notes that in each state law claim, Plaintiffs also assert a § 1983 *Monell* claim against the City of Hurricane and supervisory liability claims against Defendant Edwards and Defendant Mullins. *Compl.* ¶¶ 227, 253, 269, 280, 289, 310. For the same reasons previously addressed, *supra* Section III.B, and because § 1983 claims cannot be based on state law,[6] the *Monell* and supervisory liability claims associated with the state law claims fail and will be dismissed.[7]

---

[5] *See supra* Section III.A.ii.

[6] Section 1983 is not a source of substantive rights but rather provides "a method for vindicating federal rights elsewhere conferred." *Albright*, 510 U.S. at 271 (1994) (citation omitted). *Weller v. Dep't of Social Serv.*, 901 F.2d 387, 392 (4th Cir. 1990) (citing *Clark v. Link*, 855 F.2d 156, 163 (4th Cir. 1988) ("[T]he rule repeatedly stated by the Supreme Court and determined by us in *Surdyka* that a section 1983 claim can only be sustained by allegations and proof of a violation of the Constitution or statutes of the United States and specifically may not rest solely on a violation of state statutes or qualify as a common law tort.").

[7] The Court does not rule as to other claims against the City of Hurricane, as the issue is not before the Court.

## 1.  IIED

Plaintiffs assert claims of IIED against Defendant Carr in Count VIII and against Defendant Allen in Count X. *Compl.* ¶¶ 217–32, 245–54. As stated earlier, a plaintiff must establish the following four elements to prevail on a claim for intentional infliction of emotional distress:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis*, 504 S.E.2d 419. Defendant Carr's alleged conduct includes, in part, calling Plaintiff Tearria Simmons derogatory names, intentionally breaking a cellphone, punching Plaintiff Clinton Simmons, and refusing Plaintiff Tearria Simmons's requests regarding her children. *Compl.* ¶ 221; *Def. Carr's Mem. in L. in Supp. of J. on the Pleadings* 16, ECF No. 44 ("*Def. Carr's Mem.*"). Defendant Carr states that Plaintiff fails to establish an IIED claim because the alleged conduct is not extreme and outrageous. *Def. Carr's Mem.* 16. The Court disagrees. At least some of the alleged conduct is sufficient to state a claim of IIED. Next, Defendant Carr asserts that he is entitled to immunity under West Virginia Code § 29–12A–5(b),[8] arguing that Plaintiffs

---

[8] The West Virginia Governmental Tort Claims and Insurance Reform Act ("TCA"), West Virginia Code §§ 29-12A-1 *et seq.*, provides immunity to political subdivision under certain circumstances. Specifically, the TCA provides as follows:

> (b) An employee of a political subdivision is immune from liability unless one of the following applies:
> > (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
> > (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
> > (3) Liability is expressly imposed upon the employee by a provision of this code.
> (c) The immunity conferred upon an employee by subsection (b) of this section does not affect or limit any liability of a political subdivision for an act or omission

failed to plead facts showing that Defendant Carr acted outside the scope of his employment, in bad faith, or in a wanton and reckless manner. *Def. Carr's Mem.* 17–18. Plaintiffs allege that Defendant Carr engaged in intentionally outrageous tactics that are arguably outside the scope of employment and at least reckless. The Court finds that the pleadings state an IIED claim against Defendant Carr. Thus, Defendant Carr's objection is overruled.

Defendant Allen's alleged conduct includes, in part, threatening to arrest Tearria Simmons, threatening to call CPS to have the Simmons children removed, making an unsubstantiated false allegation to CPS in retaliation, harassing Plaintiffs through incessant yelling and knocking at the door, and subjecting Plaintiff Coram to eight stops on the street to see if he was subject to a warrant. *Compl.* ¶ 250. For the same reasons that the IIED claim asserted against Defendant Denison survives at this stage, the IIED claim asserting Defendant Allan's conduct that caused emotional distress to Tearria Simmons, too, survives. *See supra* Section III.A.ii.1.

### 2. Assault and Battery

Plaintiffs allege that Defendant Carr struck Plaintiff Clinton Simmons[9] multiple times after he was placed in handcuffs and violently removed from his working in the crawlspace of their home. *Compl.* ¶¶ 263–68. Defendant Carr did not address the assault claim, Count XI, or battery claim, Count XII, in his motion, and the counts remain against him.

### 3. Conversion

Plaintiffs' Count XIII asserts a claim of conversion against all Defendants except Defendant Denison. *Compl.* ¶¶ 273–82. In West Virginia, conversion is "the exercise of dominion over the personal property of another by a person who has no legal right to do so." *Dale v. Peoples*

---

of the employee.
West Virginia Code § 29-12A-5(b), (c).
    [9] He had an active arrest warrant. *Compl.* ¶ 262.

*Bank Corp.*, 169 F.4th 452, 457 (4th Cir. 2026) (citing *Rodgers v. Rodgers*, 184 W.Va. 82, 399 S.E.2d 664, 677 (1990)). Plaintiffs allege that on October 24, 2024, Defendants broke four windows, replacement of which costs approximately $2,500.00; wrongfully seized and retained Plaintiff Billy Lee Coram's personal property including but not limited to a marijuana plant "being kept immature and transformed into a bonsai plant" and LED grow lights, worth approximately $250; and, that Defendant Carr intentionally and maliciously broke Plaintiff Tearria Simmons's phone, worth approximately $450.00. *Compl.* ¶¶ 277–279. The Court finds Plaintiffs have sufficiently pled this claim based upon Plaintiffs' allegations of an illegal search.

### 4. Trespass and Trespass to Chattels

Counts XIV and XV assert claims of trespass and trespass to chattels against all Defendants. *Compl.* ¶¶ 283–91. As previously stated, under West Virginia common law, trespass is "an entry on another man's ground without lawful authority, and doing some damage, however inconsiderable, to his real property." *Whiteman*, 729 F.3d at 386. Trespass to chattel may be committed by "intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Yourtee v. Hubbard*, 474 S.E.2d 613, 619 (W. Va. 1996) (citing Restatement (Second) of Torts § 217 (1965)). The Court finds these claims, too, are sufficiently pled based upon Plaintiffs' allegations of an illegal search and seizure.

### 5. Professional Negligence

Count XVI asserts a claim of professional negligence against all defendants in their individual capacities. *Compl.* ¶¶ 292–313. Plaintiffs allege that Defendants had a duty of care to respect constitutional rights and protect community members. *Compl.* ¶ 296. The Complaint specifically alleges that Defendants breached their duties, in part, by failing to verify and ascertain the validity and scope of the search warrant prior to execution; failing to knock and announce;

coercing consent to search through threats; executing an overly broad search warrant; and obtaining a search warrant by means of judicial deception. *Id.* ¶¶ 296–97. Defendants argue that at no point within their negligence claim have Plaintiffs alleged that the conduct of the individual defendants was outside of the scope of their employment or occurred with the requisite intent to curtail immunity under the TCA. *See* W. Va. Code § 29-12A-5(b). However, within the professional negligence section, Plaintiffs incorporate prior pleadings which include that the defendants subjected the entire family to verbal abuse, harassed, coerced, threatened, and physically harmed various Plaintiffs. *Compl.* ¶¶ 292, 28—31, 40-43. Thus, it is premature to determine whether immunity applies.

## IV.    CONCLUSION

The Court, having reviewed the pleadings, relevant portions of the record, and objections de novo, **ADOPTS** the Magistrate Judge's Findings and Recommendations **in part** and **DECLINES TO ADOPT in part**.

The Court **GRANTS in part** and **DENIES in part** Defendant Denison's Motion to Dismiss (ECF No. 87); Defendants Johnson, Allen, Carr, White, Paynes' Motions for Judgment on the Pleadings (ECF Nos. 35, 37, 39, 41, 43); and Defendants City of Hurricane, Defendant Mullins and Defendant Edwards' Motions for Judgment on the Pleadings (ECF Nos. 45, 47, 49).

The Court **GRANTS in part** and **DENIES in part** Defendants' Objections (ECF Nos. 93, 95).

The Court **DISMISSES** official capacity claims; **DISMISSES** without prejudice the claim against the City of Hurricane; **DISMISSES** without prejudice Defendant Edwards and Defendant Mullins from the action; **DISMISSES** Plaintiffs' Fourteenth Amendment claims against Defendant Denison.

The Court **OVERRULES** Defendants' objection to the characterization of the Fourth Amendment violations. Plaintiffs' individual-capacity Fourth Amendment claims for unlawful entry and unlawful detention against Defendants Johnson, Allen, Carr, White, Payne, and Denison survive.

The Court **SUSTAINS** objections to the evaluation of the state law, Fifth Amendment, and Fourteenth Amendment claims. The Court **DISMISSES** the Fifth Amendment and Fourteenth Amendment claims. The Court also **DISMISSES** the state law claims of trespass (Count XIV) and trespass to chattels (Count XV) against Defendant Denison.

Plaintiffs' Objections to the PF&R (ECF No. 94) are **OVERRULED**.

Pursuant to the Standing Order for the assignment and referral of civil actions and matters to Magistrate Judges, ECF No. 6 at 2, this matter is again **REFERRED** to the Magistrate Judge for entry of scheduling order and all further pretrial proceedings.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to the Honorable Joseph Reeder, United States Magistrate Judge, counsel of record, and any unrepresented parties.

ENTER:      August 3, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE